909 So.2d 297 (2005)
Cecilia DAVIS, etc., Appellant,
v.
DOLLAR RENT A CAR SYSTEMS, INC., et al., Appellees.
No. 5D02-599.
District Court of Appeal of Florida, Fifth District.
November 17, 2004.
Opinion Denying Rehearing September 1, 2005.
*298 Madison B. McClellan and Linda L. Weiksnar of Gary, Williams, Parenti, Finney, Lewis, McManus, Watson & Sperando, Stuart; and Diran V. Seropian and Russell S. Bohn of Edna L. Caruso, P.A., West Palm Beach, for Appellant.
Jack W. Shaw, Jr. and George E. Carr of George E. Carr, P.A., Orlando for Appellee Beverly Williams.
Jeanelle G. Bronson and Stephen P. Matzuk of Grower, Ketcham, Rutherford, Bronson, Eide & Telan, P.A., Orlando, for Appellee, Orange County Board of County Commissioners.
No Appearance for Appellees Dollar Rent A Car Systems, Inc., Walden Auto Leasing, III, Inc., JSK Trucking, Inc., Jose Das Garcia Guimaraes, Diamond Transportation Services, Inc., Melanie Winn and Shafter Williams.
*299 SAWAYA, C.J.
Cecilia Davis, as personal representative of the estate of her deceased daughter, Twanda Green, appeals a summary final judgment rendered in favor of the defendant, Beverly Williams, in a wrongful death action arising out of an automobile accident that occurred at an intersection adjacent to property owned by Williams. There are two issues we must resolve: 1) did the failure of Davis to respond to a request for admissions asking her to admit or deny that Williams owed a duty of care to Twanda establish as a matter of law that no duty was owed; and 2) did Williams, as owner of non-commercial property, owe a duty of care regarding foliage on the property that blocked Twanda's view of the intersection that allegedly caused the fatal accident. We answer no and yes respectively. We will explain our answers by discussing the factual and procedural background of the instant case, followed by a discussion of each issue in the order presented.

Factual And Procedural Background
Twanda Green, an employee of Diamond Transportation Services, Inc., an automobile transportation service, was involved in a traffic accident as she drove in a procession of other employees who were attempting to shuttle rental cars from one location to another. The fatal accident occurred at the intersection of Sidney Hayes Road and Pine Street in Orlando. A traffic control sign at the intersection directed Twanda and the others traveling on Pine Street to yield to traffic approaching on Sidney Hayes Road. As Twanda, driving the fifth of six vehicles in the procession, approached the intersection, Twanda reduced her speed and slowly pulled out into the intersection to make a left turn. As she proceeded through the intersection, she was hit broadside by a dump truck driven by another defendant approaching the intersection via Sidney Hayes Road. Twanda died as a result of the injuries she sustained in this collision. Davis alleges that Twanda's vision of the intersecting roadway and the approaching traffic thereon was obscured for a distance of twelve feet by foliage located on property owned by Williams at the corner of the intersection.
Davis filed a wrongful death action against several defendants, including Williams.[1] Williams served the request for admissions asking Davis to admit or deny that Williams owed or assumed a duty of care to motorists passing through the intersection adjacent to Williams' property to maintain the property so that the foliage thereon would not block the motorists' view of the intersection. Davis did not timely respond and, accordingly, the trial court entered the summary judgment under review, concluding that Williams did not owe a duty of care in the instant case. Davis appeals, contending that her failure to timely answer the request for admissions did not establish as a matter of law that Williams owed no duty of care. Alternatively, Williams argues that even if Davis' assertion is correct, as a matter of law she did not owe a duty of care based on the obstructing foliage and, therefore, the summary judgment should be affirmed. We will first discuss the failure to timely respond to the request for admissions.

Failure To Timely Respond To The Request For Admissions
The parties devote much time and effort to the issue whether Davis' failure to *300 respond to the request for admissions established as a matter of law that Williams did not owe a duty of care to Twanda. Specifically, Williams requested Davis admit that:
7. Beverly Williams at no time had a duty to motorists passing through the intersection of Pine Street and Sidney Hayes Road in Orlando, Orange County, Florida to maintain the property on the northeast corner of the intersection so that the vegetation would not obstruct the vision of such motorists.
. . . .
9. Beverly Williams at no time assumed a duty to motorists passing through the intersection of Pine Street and Sidney Hayes Road in Orlando, Orange County, Florida to maintain the property on the northeast corner of the intersection so that the vegetation would not obstruct the vision of such motorists.
Requests for admission are governed by rule 1.370, Florida Rules of Civil Procedure, which provides in pertinent part that "[a] party may serve upon any other party a written request for the admission of the truth of any matters within the scope of rule 1.280(b) set forth in the request that relate to statements or opinions of fact or of the application of law to fact, including the genuineness of any documents described in the request." Fla. R. Civ. P. 1.370(a). Prior to its 1972 amendment, this rule "provided that a party could serve a written request for `. . . the truth of any relevant matters of fact set forth in the request.'" Salazar v. Valle, 360 So.2d 132, 134 (Fla. 3d DCA 1978). The case law that interpreted the earlier version of the rule held that only requests directed to factual issues that did not lie at the heart of the case were appropriate and that requests seeking admissions relating to conclusions of law were similarly inappropriate and did not require a response. See Old Equity Life Ins. Co. v. Suggs, 263 So.2d 280, 281 (Fla. 2d DCA 1972) ("Essentially, this was not a request for admission as to a fact, but rather a request for admission of a conclusion; the conclusion being that Old Equity was legally liable for the full amount claimed by Suggs. The Request for Admission was thus objectionable on its face and did not legally call for a response under the rules.") (citing City of Miami v. Bell, 253 So.2d 742 (Fla. 3d DCA 1971); Graham v. Eisele, 245 So.2d 682 (Fla. 3d DCA 1971)).
The committee notes appended to the current version of rule 1.370 specifically state that the rule was amended to "eliminate distinctions between questions of opinion, fact, and mixed questions." Fla. R. Civ. P. 1.370 committee notes. We conclude that while the current rule now allows for requests directed to opinions, facts, and the application of law to facts, it continues to make no provision for requests seeking a purely legal conclusion. Accordingly, because the response to a request seeking an admission or denial regarding whether a duty of care is owed is a purely legal conclusion, prior case law, which holds that such requests are inappropriate and that a response is thus unnecessary, is still applicable.[2] Therefore, we conclude that Davis' failure to respond to the request for admissions relating to the legal issue of whether Williams owed Twanda a duty of care may not be the basis for a summary judgment in favor of Williams. See Pandol Bros., Inc. v. NCNB Nat'l Bank of Fla., 450 So.2d 592, *301 594 (Fla. 4th DCA 1984) ("Request number 8 was not objectionable as asking for a conclusion of law, but would more appropriately be characterized as requiring `an application of law to fact,' permissible under Salazar v. Valle, 360 So.2d 132, 134 (Fla. 3d DCA 1978).").
Next, we will address whether a common law duty of care was owed by Williams to passing motorists.

Common Law Duty Of Care
Williams, an owner of private noncommercial property, argues that she did not owe a duty of care to Twanda, a motorist on a public roadway whose vision of the intersection and highway adjacent to Williams' property was obscured by foliage thereon. The trial court agreed, eschewing the foreseeable zone of risk analysis that the supreme court established in McCain v. Florida Power Corp., 593 So.2d 500 (Fla.1992), to determine whether a duty of care exists. Instead, the trial court adopted a blanket rule that there is no common law duty owed by a private landowner whose property obscures the view of motorists on an adjacent highway or intersection. Accordingly, the trial court entered summary judgment in favor of Williams. For reasons we will now explain, we conclude that the foreseeable zone of risk standard must be applied and that application of this standard to the instant case prohibits the summary judgment entered in favor of Williams.
Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fla. R. Civ. P. 1.510(c). The courts must exercise restraint in granting summary judgments because they deprive a party of his or her right to trial. Clay Elec. Co-op., Inc. v. Johnson, 873 So.2d 1182 (Fla.2003). Accordingly, if the court has any doubts, those doubts must be resolved in favor of the nonmoving party. Clay Electric. In the instant case, we must review the trial court's ruling granting Williams' motion for summary judgment de novo because it poses a question of law. Id.
Williams contends that decisions rendered prior to McCain apply and that she owed no common law duty of care to Twanda in the instant case. See Pedigo v. Smith, 395 So.2d 615, 616 (Fla. 5th DCA 1981) ("[T]he owner of land is under no affirmative duty to remedy conditions of purely natural origin upon his land.") (citation omitted); Evans v. Southern Holding Corp., 391 So.2d 231 (Fla. 3d DCA), pet. for review denied, 399 So.2d 1142 (Fla. 1981). These decisions adopted the traditional view that a property owner owed no duty of care to motorists whose vision was obscured by natural conditions on the owners' property adjacent to the highway. The traditional view recognized, however, that a duty may be owed relating to artificial conditions (for example, foliage that was planted by the landowner) on the property that obscured a motorist's vision of the highway or intersection. Whitt v. Silverman, 788 So.2d 210 (Fla.2001). Hence, if we were to apply the traditional view as Williams contends, summary judgment would be improper because there is nothing in the record to indicate whether the foliage was natural or whether it was planted there by Williams.
However, the traditional view has been discarded by the Florida Supreme Court. Acknowledging the recent judicial trend by many courts to reject the dichotomy between artificial and natural conditions as outdated, the Florida Supreme Court held in Whitt that this distinction would no longer be recognized in determining whether a private landowner owed a duty *302 of care to a motorist whose vision was obstructed by a condition on the owner's premises. Rather, the court held in Whitt that the foreseeable zone of risk analysis established in McCain was the proper legal standard to determine whether a duty of care was owed in such circumstances.
Whitt is analogous to the instant case. In Whitt, a customer of a service station was attempting to exit the premises when she struck two pedestrians, injuring one and killing the other. Because the property owners had a dense stand of foliage on the premises that blocked the driver's view of the sidewalk, the plaintiffs brought suit against the property owners. The trial court dismissed the common law negligence action, and the Third District Court of Appeal affirmed, concluding that the foliage did not protrude onto the public way and therefore there was no duty owed by the property owners to maintain the foliage for the benefit of others outside the premises. Whitt v. Silverman, 732 So.2d 1106 (Fla. 3d DCA 1999). The Florida Supreme Court held that pursuant to McCain, the property owners' conduct created a foreseeable zone of risk posing a general threat of harm toward those entering and exiting the premises as well as those pedestrians and motorists using the abutting streets and sidewalks. Therefore, the court quashed the decision of the Third District Court and held that the property owners owed a duty of care to the pedestrians.
Duty of care is an essential element in any negligence action. The issue of duty is a question of law to be determined by the trial court as "a minimal threshold legal requirement for opening the courthouse doors" before the "more specific factual requirement" to prove causation can go to the trier of fact. McCain, 593 So.2d at 502 (footnote omitted). In McCain, the Florida Supreme Court explained the legal analysis that we must employ when determining whether the defendant in a negligence action owed a duty of care to the plaintiff. In making this determination as a matter of law, we must focus "on whether the defendant's conduct foreseeably created a broader `zone of risk' that poses a general threat of harm to others." Id. at 502 (citations omitted). Foreseeability is the crucial element in defining the scope of the general duty placed on every person to avoid negligent acts or omissions. "Where a defendant's conduct creates a foreseeable zone of risk, the law generally will recognize a duty placed upon defendant either to lessen the risk or see that sufficient precautions are taken to protect others from the harm that the risk poses." McCain, 593 So.2d at 503 (quoting Kaisner v. Kolb, 543 So.2d 732, 735 (Fla.1989)) (citations omitted). Because the perceived risk defines the duty the defendant must undertake, the scope of the duty increases as the risk increases. McCain, 593 So.2d at 503. Therefore, in determining whether a duty was owed by the defendant, "the proper inquiry for the reviewing appellate court is whether the defendant's conduct created a foreseeable zone of risk, not whether the defendant could foresee the specific injury that actually occurred." McCain, 593 So.2d at 504. The court then explained:
The statute books and case law, in other words, are not required to catalog and expressly proscribe every conceivable risk in order for it to give rise to a duty of care. Rather, each defendant who creates a risk is required to exercise prudent foresight whenever others may be injured as a result. This requirement of reasonable, general foresight is the core of the duty element. For these same reasons, duty exists as a matter of law and is not a factual question for the jury to decide: Duty is the standard of conduct given to the jury for *303 gauging the defendant's factual conduct. As a corollary, the trial and appellate courts cannot find a lack of duty if a foreseeable zone of risk more likely than not was created by the defendant.
Id. at 503 (emphasis added). Hence if we determine that a foreseeable zone of risk was more likely than not created by Williams, a duty of care was created and the courthouse doors swing open to allow Davis to enter and litigate her claim on the merits. As the court in Henderson v. Bowden, 737 So.2d 532 (Fla.1999), noted in explaining the McCain zone of risk analysis, "No better general statement can be made than that the courts will find a duty where, in general, reasonable persons would recognize it and agree that it exists." Id. at 536 (quoting W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 53, at 359 (5th ed.1984)).
In determining the threshold issue of legal duty, a trial court is required to examine the factual allegations that go to the question of whether a duty was foreseeable. See McCain, 593 So.2d at 503 n. 1. Facts to support foreseeability can be relevant to both the element of duty and the element of proximate causation. Florida Power & Light Co. v. Periera, 705 So.2d 1359 (Fla.1998) (citing McCain, 593 So.2d at 502). The necessary examination of alleged facts, which the supreme court recognizes may be essential in determining whether or not a legal duty exists, does not convert the duty analysis into a jury question.
With these principles in mind, we examine the factual allegations. Davis alleged the following as to Williams in the third amended complaint:
72. That at all times material hereto, Defendants WILLIAMS were the owners of real property located at the northeast corner at or near the intersection of Sidney Hayes Road and Pine Street in Orlando, Orange County, Florida.
73. That on or about August 25, 1997, decedent Twanda Green was operating a vehicle at or near the above-described intersection when she was hit broadside by oncoming traffic resulting in her death.
74. That according to the Investigative Report of the Florida Highway Patrol, said property was overgrown with bushes and trees thereby obscuring the view for westbound traffic on Pine Street, of the northbound lane of Sidney Hayes Road, up to a distance of approximately 12 feet from the intersection.
75. Defendants WILLIAMS had a duty and/or assumed a duty to maintain the vegetation growing on their property so that the vegetation would not obstruct the vision of drivers lawfully operating vehicles at or near the intersection of Pine Street and Sidney Hayes Road, Orlando.
Pursuant to McCain, which we are bound to apply, we conclude that these allegations present a situation in which a foreseeable zone of risk was more likely than not created by Williams and that Williams owed a duty of care to Davis. It is undisputed that Williams owned the property adjacent to the intersection where the fatal accident occurred and Davis specifically alleges that the view of the highway at the intersection was obscured by overgrown foliage on Williams' property. Davis further alleges that because of this obstruction, the decedent was unable to clearly see the traffic at the intersection and this was a cause of the accident. Moreover, for purposes of the summary judgment proceedings in the trial court, we do not find in the record any *304 evidence presented by Williams contesting the allegation that the foliage did obstruct the view of the intersection and, similar to Whitt, there is nothing in the record to indicate that it would have been unduly burdensome for Williams to have maintained the foliage to eliminate the danger. Even if we maintained any doubts about this issue, and we do not, pursuant to the standard of review we must apply to summary judgments, any doubts must be resolved in favor of Davis as the nonmoving party. See Clay Electric. Therefore, we cannot find a lack of duty in the instant case and the summary judgment must be reversed.
The record also indicates that there may be another basis upon which a duty of care may be established. Davis alleges that Williams had entered into a contract with Orange County to clear this foliage. The alleged existence of the contract gave rise to a separate action by Davis against the Orange County Board of County Commissioners. On appeal from a summary judgment in favor of Orange County, this court reversed for further proceedings on the issue whether Orange County had entered into a contract with Williams to clear the overgrown foliage on Williams' property adjacent to the intersection where the accident occurred. Davis v. Orange County Bd. of County Comm'rs, 852 So.2d 370 (Fla. 5th DCA 2003).
This contractual issue could be significant to the instant case because the existence of such a contract may be evidence that Williams voluntarily undertook a duty to clear the obstructing foliage to reduce the danger to those entering and exiting the intersection. "It is clearly established that one who undertakes to act, even when under no obligation to do so, thereby becomes obligated to act with reasonable care." Union Park Mem'l Chapel v. Hutt, 670 So.2d 64, 66-67 (Fla.1996) (citations omitted); see also Clay Electric. In Union Park, the complaint alleged, as does Davis' complaint in the instant case, that the defendants "had a duty and/or assumed a duty. . . ." The court held that this allegation was sufficient to allege a duty that may have been voluntarily assumed. It is noteworthy that the court in Union Park applied the foreseeable zone of risk analysis adopted by the court in McCain. Hence, even if there had been no common law duty of care owed by Williams as a private landowner regarding foliage on her property, then summary judgment was still improper based on the possibility that Williams voluntarily assumed a duty via the alleged contract with Orange County. See Davis.

Conclusion
Davis' failure to answer the request for admissions did not support the entry of summary judgment against her because a request for admissions seeking an admission regarding a conclusion of law is not appropriate under rule 1.370 and thus does not require a response. We also conclude, pursuant to Whitt and McCain, that the foreseeable zone of risk standard must be applied to determine whether a duty of care was owed by a private landowner to a motorist injured in an accident allegedly caused by foliage on the owner's property that obstructed the motorist's view of the intersection. Having applied this standard, we further conclude that the facts as alleged would create a duty of care to the decedent under the particular circumstances of the instant case and that summary judgment for Williams was improper.
We express no opinion relating to the merits of Davis' case. See Clay Electric. We simply hold that the courthouse doors should be opened to Davis so she can litigate the merits of her claim. Whether the foliage was the proximate cause of the *305 accident, what the standard of care should be in the instant case, and whether the decedent was solely at fault are matters that should be left either to the jury or to appropriate pretrial motions presented to the trial court.
We certify to the Florida Supreme Court as a matter of great public importance the following question:
DOES THE FORESEEABLE ZONE OF RISK ANALYSIS ESTABLISHED IN MCCAIN APPLY TO PRIVATE OWNERS OF NON-COMMERCIAL PROPERTY CONTAINING FOLIAGE THAT BLOCKS MOTORISTS' VIEW OF AN ADJACENT INTERSECTION AND CAUSES AN ACCIDENT WITH RESULTING INJURIES?
REVERSED.
PALMER, J., concurs.
GRIFFIN, J., concurs in part and dissents in part, with opinion.
GRIFFIN, J., concurring in part; dissenting in part.
I respectfully dissent from the opinion of the majority on the question whether the Williamses owed a duty to provide motorists a clear view of oncoming traffic across their property.[1]
It is clear that Florida has not historically recognized any such duty. Bassett v. Edwards, 158 Fla. 848, 30 So.2d 374, 376 (1947); Pedigo v. Smith, 395 So.2d 615-16 (Fla. 5th DCA 1981); Evans v. Southern Holding Corp., 391 So.2d 231 (Fla. 3d DCA 1980). There is also no doubt that a recent line of cases of the Supreme Court of Florida, beginning with McCain v. Florida Power Corp., 593 So.2d 500 (Fla.1992), especially Whitt v. Silverman, 788 So.2d 210 (Fla.2001), may have altered this legal landscape (no pun intended). Williams urges that the decision in Whitt, on which the majority principally relies, is expressly limited to commercial property and that a non-commercial landowner in Florida does not have a common law duty to provide visibility across their property for the benefit of motorists traveling adjacent public roads.
According to the Florida Highway Patrol's Traffic Homicide Investigation Report, this two-vehicle accident occurred at the intersection of Sidney Hayes Road and Pine Street in Orlando, Orange County, Florida. Twanda Green ["Green"] worked as a driver for Diamond Transportation Services, Inc. Green was driving on Pine Street as she approached an intersection with Sidney Hayes Road where there is a yield sign. Guimaraes, the driver of a dump truck, was driving on Sidney Hayes Road towards Pine Street. Green pulled forward from the yield sign in an attempt to make a left turn onto Sidney Hayes Road and drove into Guimaraes' path. Guimaraes veered and braked, but could not avoid Green. Green later died from injuries sustained in the collision. The investigation report described the intersection where the accident occurred:
There is a chain link fence on the south side of Pine St. and east side of Sidney Hayes Rd. south of Pine St. which is overgrown with bushes and trees. This obscures the view for westbound traffic on Pine St. of the northbound lane of Sidney Hayes Rd. up to a distance of approximately 12 feet from the intersection.
This property was later determined to be owned by defendant Williams. The report *306 further stated that Green was responsible for her own death as she was in violation of the statute requiring a driver approaching a yield sign to slow down or stop before entering the intersection, and to yield the right of way to any vehicle in the intersection or any vehicle approaching the intersection.
Davis, as personal representative of Green's estate, subsequently instituted a wrongful death action and eventually alleged the following as to Williams[2] in her third amended complaint:
72. That at all times material hereto, Defendants WILLIAMS were the owners of real property located at the northeast corner at or near the intersection of Sidney Hayes Road and Pine Street in Orlando, Orange County, Florida.
73. That on or about August 25, 1997, decedent Twanda Green was operating a vehicle at or near the above-described intersection when she was hit broadside by oncoming traffic resulting in her death.
74. That according to the Investigative Report of the Florida Highway Patrol, said property was overgrown with bushes and trees thereby obscuring the view for westbound traffic on Pine Street, of the northbound lane of Sidney Hayes Road, up to a distance of approximately 12 feet from the intersection.
75. Defendants WILLIAMS had a duty and/or assumed a duty to maintain the vegetation growing on their property so that the vegetation would not obstruct the vision of drivers lawfully operating vehicles at or near the intersection of Pine Street and Sidney Hayes Road, Orlando.
Whitt is factually similar to this case in significant ways. In Whitt, two pedestrians were struck and killed by a vehicle leaving the premises of a service station. It was alleged that the landowners had a stand of foliage between their service station and the adjacent property that impaired the driver's view of the sidewalk. The foliage was, however, completely on the landowners' property and did not intrude onto the public way. Following prior Florida cases, the Third District Court of Appeal concluded that, where the foliage on a landowner's property did not intrude onto the public way, the landowner had no duty to maintain the foliage for the benefit of third parties located outside the property. Whitt v. Silverman, 732 So.2d 1106, 1108 (Fla. 3d DCA 1999).
The Florida Supreme court quashed the Third District's decision. The high court referred to the concept of duty applied by the Third District as the "agrarian rule," and described it as being "dated." 788 So.2d at 213-14.[3] The supreme court then engaged in an extended discussion of the duty a landowner should owe to third persons located outside the property and settled on the application of the court's previously articulated "foreseeable zone of risk" analysis to determine the existence of a duty. The actual holding of Whitt is very narrow, however. The holding of Whitt *307 was that "a commercial business in an urban area specifically relying on the frequent coming and going of motor vehicles" was subject to its "foreseeable zone of risk" analysis as described in McCain. Id. at 222.
The question is whether Whitt's "foreseeable zone of risk" analysis, which gave rise to the duty to maintain foliage for the benefit of third parties located outside a commercial premises, also applies in a noncommercial context, and, if so, under what circumstances. The analysis in Whitt suggests to the majority that if "lack of visibility" caused by foliage impairs the ability of drivers to see and react to oncoming traffic or approaching pedestrians, the failure to trim this foliage creates a "foreseeable zone of risk" that the landowner is bound to remediate. It is certainly true that much of the analysis in Whitt would apply equally to any site, no matter whether urban, suburban or rural, and no matter whether commercial or non-commercial. On the other hand, the Whitt court took pains to limit its holding to a commercial property and the holding in Whitt expressly tied its reasoning to the fact that the driver was invited to come onto the property for business purposes and ingress/egress was controlled by the landowner. Id. In a non-commercial context like this case, no driver has been attracted to the property by the landowner's business and there is no need for or expectation of a "safe egress."
There are a couple of unsettling concepts in Whitt. If Whitt is not limited to a commercial context, it suggests that no defined rules of negligence apply any longer to landowners or possessors. In this regard, I note that the reporters working on the current revision to the Restatement of Torts appear to consider that separate rules still do apply. See Restatement Third, Torts: Liability for Physical Harm (Basic Principles), Tentative Draft No. 4 at 1(ALI, April 1, 2004). Second, the "foreseeable zone of risk" analysis used in Whitt appears to include the requirement to anticipate that third parties, including the victim, might themselves be negligent and to take preventative measures. In other words, Whitt requires the taking of affirmative steps to eliminate the environment in which a third party might act negligently. As in the facts of Whitt, for example, if the business owner could assume that the motorist leaving his property would exercise due care, then there would be no zone of risk.[4] The Whitt court explained its decision in this way:
We conclude that an inquiry as to the liability of a landowner under the circumstances presented here of a commercial business in an urban area specifically relying on the frequent coming and going of motor vehicles should be guided by a foreseeability analysis, which, as we have frequently stated, is governed by our pronouncements in McCain. In the instant case, the landowners were the owners of a commercial establishment, a service station, which by its very nature involves a continuous flow of traffic entering and exiting the premises for the commercial benefit of the landowners. In addition, it is undisputed that the *308 landowners had exclusive control over the foliage and landscaping on the business premises, and it does not appear that it would have been unduly burdensome for the landowners to have maintained this foliage consistent with the safe egress and ingress of vehicles attracted to the business and persons affected thereby.
788 So.2d at 222.
At the end of its analysis, the supreme court in Whitt was willing only to say that, where the landowner operates a commercial enterprise in an urban area that causes people to drive onto the property in cars and then leave in cars, the business owner has a duty to assure that this happens safely. In Whitt, it is not the ownership of land or the failure to trim or eliminate a hedge that creates the zone of risk, but the conduct of a drive-in/drive-out commercial enterprise on the property in proximity to the sidewalk that creates the zone of risk and gives rise to the duty to trim the foliage.
There is a second limitation to the holding in Whitt. The court expressly confined its holding to "urban" settings. In its discussion of the prevailing law, the court noted that the Restatement Second of Torts had expanded landowner liability to the extent of the condition of trees in an urban area. 788 So.2d at 216. The court noted that use of the word "condition" had generally been interpreted not to include the tree's location, only the risk that debris from the tree might fall onto the roadway. Id at n. 10. Although the court did not expressly accept the rural/urban dichotomy, it appears that this cautious expansion of liability to an urban setting was significant to the Whitt court. The absolute rhetoric of "foreseeable zone of risk" notwithstanding,[5] this suggests that ultimately the negligence inquiry remains a classic balancing test: what is the foreseeability and likelihood that defendant's conduct will result in injury to another against the burden to the defendant of avoiding the injury and what are the social consequences of imposing such a burden?[6]
*309 In Whitt, the court implicitly determined that where the location is urban and commercial and cars will inevitably meet pedestrians where the driveway meets the sidewalk, the foreseeability and likelihood of injury are substantial. At the same time, given the size of the property, the nature of the obstruction and the profit motive of the owner, the burden on the commercial landowner to provide visibility for safe egress is slight, thereby giving rise to a duty to provide visibility.
Just months before our supreme court decided Whitt, a Massachusetts court was faced with a fact pattern very close to the one in this case. In Hackett v. Costa, 12 Mass. L. Rep. 420, 2000 WL 1862676 (Mass.Super.2000), a motorcyclist injured when an automobile pulling a camper pulled out in front of him at an intersection, sued the adjacent property owner, alleging that his line of sight was impaired by shrubbery located entirely within the property on the corner and that the line of sight of the driver of the automobile was "shortened." The Massachusetts court reviewed the cases on both sides of this issue in other jurisdictions and rejected this claim of liability. Id. at *1. The court noted that the legislature had placed the burden of safely traversing an intersection on the motorists using the road and had imposed no duty on landowners at intersections to provide an unobstructed view to motorists. Id. at *2. Also, the local government had enacted many ordinances designed to eliminate obstructions to the flow of traffic, but not to visibility.[7]Id. The court also observed that such a common law duty to eliminate obstructions to visibility would make the line between liability and no liability almost impossible to draw and would certainly turn this issue into a battle of experts opining on sight lines and traffic patterns. Id. at *4.
The Hackett court was familiar with the Third District's Evans decision and rejected the dissent's notion that landowner liability could appropriately be decided post-accident on a "reasonableness" basis. Id. The Massachusetts court expressed the view that landowners are entitled to notice of exactly what is expected of them and pointed out that in a judicially-created environment of undefined "reasonableness" a landowner would be prudent to remove all vegetation "that may conceivably be argued one day to violate his duty of care to motorists." Id. If corner properties at intersections are to be made bare of vegetation, this is a decision more appropriately made by the legislature. Unlike Whitt, the Hackett court found it important that Massachusetts courts historically had never imposed a duty on property owners to provide visibility to persons outside the land, observing that, on both large and small tracts of land adjacent to public ways and intersections, standing trees, high hedges and flowering shrubs are customary, even encouraged. Id. at *3.
Although, in his Evans' dissent, Judge Schwartz may have been correct in saying that "the Republic will not fall"[8] solely because the question of a landowner's fault in not providing adequate visibility of approaching traffic to the motoring public is *310 decided by a jury on a case-by-case basis, I question whether it is either fair or desirable to leave entirely to a post-hoc decision by a jury the question whether a landowner has sufficiently accommodated or protected those beyond his property who may benefit from having a clear view across it. Landowners in Florida also have the right to know what is expected of them. If the rule in Florida is going to be that a landowner has a duty to ascertain whether a risk of harm to third parties is affected by conditions on his property and to "see that sufficient precautions are taken to protect" those third parties even from their own negligence, we ought be willing (and able) to define the duty. How many feet of clearance or visibility must they provide? How good does the clearance have to be? Why would this duty not extend to keeping vehicles or other obstructions out of the line of vision? Is the landowner's duty affected by the public authority's decisions as to speed and traffic control? If, for example, there had been a traffic signal at this intersection instead of a "yield" sign, the accident would likely not have occurred. Or, if it had occurred even though a traffic light controlled the intersection, would the majority's conclusion that Williams owed a duty to Green be the same? Why shouldn't the public body be required to provide traffic control to meet the conditions on the adjacent property instead of requiring the landowner to maintain his property in light of the public body's decisions on traffic control?
There are several photographs of this intersection in the record, but many are photocopies. The setting does not appear to be urban, but it is difficult to characterize the location absolutely as being "rural." It is conceded, however, that the Williams' property is not used commercially. The principals to the accident were not invitees and were not enticed to the intersection by any commercial use at the location. In my view, therefore, there was no common law duty on Williams' part to provide visibility across the property for the benefit of the traveling public.

ON MOTION FOR REHEARING
SAWAYA, J.
The Appellee, Beverly Williams, has filed a motion for rehearing directed to our opinion rendered on November 17, 2004. We feel compelled to address the allegations and arguments made in the motion because it is obvious that Williams misunderstands and misstates the rationale of our decision. The motion for rehearing asserts that no duty was owed by Williams because the decision in Whitt v. Silverman, 788 So.2d 210 (Fla.2001), has a very narrow reach and is limited to private property used commercially. Williams thus argues that we should apply a strict rule of no liability for private property owners like herself whose property is not used commercially, rather than the foreseeable zone of risk standard applied in Whitt. Indeed, the central issue in this case is whether the foreseeable zone of risk standard applies. The argument is also advanced that no duty of care should be owed based on the policy consideration that it would be "ruinous" and, therefore, unreasonable to expect private landowners to keep their property clear of foliage so that it does not obstruct the view of motorists entering and exiting an adjacent intersection.
Addressing first the assertions made regarding our application of the decision in Whitt, we did not say that Whitt is indistinguishable from the instant case. We did say, however, and correctly so, that Whitt is factually analogous because it involved private property containing foliage that obstructed the view of motorists attempting to negotiate the adjacent intersection. *311 Obviously, the fact that the property in Whitt was commercial as opposed to non-commercial is a distinguishing feature. Nevertheless, Whitt is clear in holding that the foreseeable zone of risk standard adopted by the court in McCain v. Florida Power Corp., 593 So.2d 500 (Fla.1992), is the appropriate standard for us to apply to determine whether a duty is owed by private landowners, like Williams, to motorists whose view of the adjacent roadway is obstructed by foliage on their property. In this regard, it is beyond doubt that Whitt is indistinguishable from cases where the property, as in the instant case, is not used commercially. Indeed, the court in Whitt clearly stated that in negligence cases in general, the foreseeable zone of risk standard as explained in McCain must be applied to determine whether a common law duty was owed. Specifically, the court in Whitt stated that the purpose of the decision in McCain is to "restate the general principles of negligence law and clarify the role that foreseeability plays in evaluating the duty and proximate cause elements of a common law negligence claim." Whitt, 788 So.2d at 216. The court further stated:
Importantly, subsequent decisions in accident cases resulting from visual obstructions to motorists have recognized and applied McCain's foreseeability analysis to determine whether the landowner owed a duty of care and whether that duty was breached in a particular instance. See Napoli v. Buchbinder, 685 So.2d 46, 47 (Fla. 4th DCA 1996) (holding that plaintiff's wrongful death action alleging that design of parking lot and placement of stop sign which contributed to accident created a material question of fact as to whether defendant's alleged negligence placed plaintiff in a foreseeable zone of risk); Dykes v. City of Apalachicola, 645 So.2d 50 (Fla. 1st DCA 1994) (holding that the test to determine whether city was liable for trees and bushes which allegedly contributed to an accident was whether defendant's conduct created a "foreseeable zone of risk"). Hence, it appears that McCain has been applied in most instances as we intended, as a restatement of the law of negligence.
Id. at 217-18 (emphasis added). Moreover, the courts of this state have consistently held that the foreseeable zone of risk standard adopted by McCain must be applied in order to properly determine whether a common law duty was owed in negligence cases.[1] For example, in *312 Henderson v. Bowden, 737 So.2d 532 (Fla. 1999), the court held:
In McCain v. Florida Power Corp., 593 So.2d 500 (Fla.1992), this Court explained the legal analysis that a court must engage in when determining whether the defendant in a negligence action owed a duty of care to the plaintiff:
The duty element of negligence focuses on whether the defendant's conduct foreseeably created a broader "zone of risk" that poses a general threat of harm to others. See Kaisner, 543 So.2d at 735 (citing Stevens v. Jefferson, 436 So.2d 33, 35 (Fla.1983))....
... Foreseeability clearly is crucial in defining the scope of the general duty placed on every person to avoid negligent acts or omissions. Florida, like other jurisdictions, recognizes that a legal duty will arise whenever a human endeavor creates a generalized and foreseeable risk of harming others. As we have stated:
Where a defendant's conduct creates a foreseeable zone of risk, the law generally will recognize a duty placed upon defendant either to lessen the risk or see that sufficient precautions are taken to protect others from the harm that the risk poses.

Kaisner, 543 So.2d at 735 (citing Stevens v. Jefferson, 436 So.2d 33, 35 (Fla.1983)) (emphasis added); see Webb v. Glades Elec. Coop., Inc., 521 So.2d 258 (Fla. 2d DCA 1988). Thus, as the risk grows greater, so does the duty, because the risk to be perceived defines the duty that must be undertaken. J.G. Christopher Co. v. Russell, 63 Fla. 191, 58 So. 45 (1912).
Id. at 535 (emphasis added). The Florida Supreme Court has recently emphasized that "[t]he core predicate for imposing liability is one of reasonable foreseeabilitythe cornerstone of our tort law." Malicki v. Doe, 814 So.2d 347, 362 (Fla.2002). In our prior opinion, we applied the appropriate standard mandated by McCain and Whitt and analyzed whether the foliage that obstructed the view of the decedent as she attempted to enter the intersection created a foreseeable zone of risk. Our conclusion was that it did and that a common law duty was therefore owed by Williams to the decedent. As we noted in our opinion, the fact that the foliage obstructed the view of motorists attempting to enter the intersection is uncontested by Williams.
Rather than engage in a proper foreseeability analysis to determine whether a *313 zone of risk was created by the obstructing foliage as we did in our opinion, Williams simply argues that we should adopt a strict rule of no liability for a private landowner who is not using his or her property commercially. Despite assertions to the contrary by Williams, private landowners may be held liable for foliage obstructions emanating from their property in other factual contexts. For example, a private non-commercial landowner who allows a limb from a tree on his or her property to protrude over the boundary line and obscure a sign on a roadway may be held liable to a motorist who is unable to see the sign and abide by its message. See Armas v. Metropolitan Dade County, 429 So.2d 59 (Fla. 3d DCA 1983); Morales v. Costa, 427 So.2d 297 (Fla. 3d DCA), review denied, 434 So.2d 886 (Fla.1983). In Sullivan v. Silver Palm Properties, Inc., 558 So.2d 409 (Fla.1990), the Florida Supreme Court discussed the decisions in Armas and Morales and the foreseeability of the danger posed by a branch that overhangs the landowner's property and obstructs a traffic control sign. The court stated that "common sense required that a duty be imposed upon the landowner to remove landscaping which obstructed critical traffic signage. Vegetation that overhangs and blocks out a traffic control device constitutes an obvious condition and presents an imminent danger of uncontrolled traffic." Id. at 411 (quoting Silver Palm Props., Inc. v. Sullivan, 541 So.2d 624, 626 (Fla. 3d DCA 1988)). Surely, if the danger posed by an overhanging branch that obstructs a sign is foreseeable, the danger posed by a stand of foliage large enough to block the view of an entire intersection is also foreseeable. To follow the rationale of Williams to its logical conclusion would result in the anomalous situation in the law that a private landowner may be held liable for a branch of a tree that blocks the view of a sign, but may escape liability for a large stand of foliage that blocks the view of an entire intersection.
Williams argues that our decision is contrary to this court's decision in Pedigo v. Smith, 395 So.2d 615 (Fla. 5th DCA 1981), and that Pedigo, rather than Whitt and McCain, establishes the appropriate standard for us to apply in the instant case. Williams contends that Pedigo adopted a strict rule of no liability for private landowners, which relieves her of any responsibility for the tragic accident that took the life of the decedent. Williams misreads Pedigo. Our decision in Pedigo applied the agrarian rule, which provided that a private landowner could not be held liable for natural conditions in an urban setting that obstructed the view of motorists on adjacent highways or intersections. Indeed, Pedigo specifically held that "the negligence of motorists who collide at intersections intervenes and supersedes that of private property owners of natural vegetation, in the absence of some statutory or ordinance violation."[2]Pedigo, 395 So.2d at 617. Hence, under the agrarian *314 rule, contrary to Williams' assertions, a private landowner of non-commercial property may be held liable for artificial conditions such as planted foliage or fencing. Since we do not know whether the foliage in the instant case was natural or artificial, summary judgment is inappropriate under the agrarian rule and Pedigo.[3]
However, the court in Whitt discarded the agrarian rule because it is outdated, and in doing so, it disapproved of the decision in Pedigo and cases like it. Williams seems to argue that the court in Whitt disapproved of the agrarian rule only in cases where commercial property is involved. Again, Williams misreads Whitt and ascribes far too narrow a holding to it. Clearly, the court in Whitt meant to, and did, say that the agrarian rule has been completely abrogated in all negligence cases and that in its place, courts must apply the McCain foreseeable zone of risk standard. Hence, that is the appropriate standard we must apply to private landowners whose property is not used commercially. This conclusion is not to be unexpected and was recognized by the lone dissenter in Whitt, Justice Wells, when he stated that "[a]lthough the majority view is appealing, I am concerned about the extensive exposure to liability which this decision will now cast upon all real property owners, including homeowners." Whitt, 788 So.2d at 223 (Wells, J., dissenting).
We are unimpressed with the policy argument presented by Williams that liability *315 would be "ruinous" to the private landowner. We note that if liability for artificial conditions such as walls, fences, and landscaping would be ruinous as Williams contends, it has been so since Pedigo, and we have yet to witness the ruination of the private landowner. Moreover, similar policy arguments were dismissed by the Florida Supreme Court in Clay Electric Cooperative, Inc. v. Johnson, 873 So.2d 1182 (Fla.2003). In Clay Electric, the court addressed claims by the defendant that imposing a duty of care would violate public policy because it would open the floodgates to similar lawsuits and be financially burdensome to require that defendants take measures to reduce the risk of harm to others. The court rejected this argument, stating that "[a]lthough courts, where appropriate, will address existent public policy concerns, Clay Electric's `floodgate' argument asks this Court to base its decision on pure speculation. The electric company cites no record evidence supporting its hypothesis." Id. at 1189 (emphasis in original). Likewise, we have no record evidence supporting Williams' claim based on her public policy arguments. The court in Clay Electric used the following quote from Weinberg v. Dinger, 106 N.J. 469, 524 A.2d 366 (N.J.1987), to further explain:
[T]he primary purpose of tort law is "that wronged persons should be compensated for their injuries and that those responsible for the wrong should bear the cost of their tortious conduct." Moreover, forcing tortfeasors to pay for the harm they have wrought provides a proper incentive for reasonable conduct.... The fear of limitless liability and litigation has marked many advances in tort law. As we said in [a prior case], "[t]he answer to the allegation of unchecked liability is not the judicial obstruction of a fairly grounded claim for redress. Rather, it must be a more sedulous application of traditional concepts of duty and proximate causation to the facts of each case." Reasonable care is not a standard beyond the reach of any enterprise.
Weinberg, 524 A.2d at 375-79 (footnote and citations omitted) (quoting People Express Airlines, Inc. v. Consolidated Rail Corp., 100 N.J. 246, 495 A.2d 107, 111 (N.J.1985)). The court in Clay Electric agreed with the Weinberg analysis, noting its consistency with Florida's own precedent:
The answer to the issue posed in the present cases lies not in the judicial obstruction of the plaintiffs' claims, but in the sedulous, even-handed application of established principles of tort law. Reasonable care is not a standard that is beyond Clay Electric's reach. We approve the decisions of the district court in Johnson v. Lance, Inc., 790 So.2d 1144 (Fla. 1st DCA 2001), and Lance, Inc. v. Johnson, 790 So.2d 1163 (Fla. 1st DCA 2001), as explained herein.
Clay Electric, 873 So.2d at 1190-91.
Just as in Clay Electric, if there is to be a finding of no liability in the instant case, it must be based on the sedulous, evenhanded application of established principles of tort law rather than judicial obstruction of Davis' claim. That application of tort law was explained by Justice Pariente in her concurring opinion in Clay Electric:
The questions that will be addressed first by the jury will be whether Clay Electric was negligent in failing to maintain the streetlights and, if so, whether its negligence was a legal cause of the accident. If the jury determines the existence of liability on the part of Clay Electric, the jury may also determine that the motorist was also at fault and *316 attribute a percentage of responsibility to the motorist. The jury would also be charged with determining any comparative negligence on the part of the pedestrian. All that is decided by the majority opinion is that from the factual allegations in this case, a duty arose on the part of Clay Electric to exercise reasonable care. That is not a novel concept but instead an application of well-established principles of negligence.
Clay Electric, 873 So.2d at 1195 (Pariente, J., concurring). If we are wrong in our application of the foreseeable zone of risk standard, the Florida Supreme Court will tell us. If there should be no liability in cases such as this as a matter of public policy, the Legislature will tell us.
Finally, Williams alleges that the lack of evidence of prior accidents at the intersection established as a matter of law that she owed no duty of care to the decedent under the holding of McCain. This certainly is an incorrect statement of Florida law. As the court held in Springtree Properties, Inc. v. Hammond, 692 So.2d 164 (Fla.1997), the absence of similar accidents does not make a particular accident unforeseeable as a matter of law and may not be the basis for holding that no duty was owed.
MOTION FOR REHEARING DENIED.
PALMER, J., concurs.
GRIFFIN, J., dissents, with opinion.
GRIFFIN, J., dissenting.
Recently, the American Law Institute, at its meeting in Philadelphia, received and considered "Proposed Final Draft No. 1" of its Third Restatement of the Law of Torts entitled, "Liability for Physical Harm" ["the Draft"].[4] I have looked it over to see if somewhere within its 852 pages I would find a formulation that would help me explain more coherently why, as a matter of law, Mr. and Mrs. Williams are not liable under a theory of negligence for the injuries suffered by Twanda Green. This is what I found.
Section 6 of the draft entitled, "Liability for Negligent Conduct," provides:
An actor whose negligence is a factual cause of physical harm is subject to liability for any such harm within the scope of liability, unless the court determines that the ordinary duty of reasonable care is inapplicable.
Id. at 79. The Comment to Section 6 explains that this issue of "duty" is a "question of law for the court to determine." Id.
Section 7(a) of the Draft is most analogous to the "foreseeable zone of risk" analysis applied in Whitt:
§ 7. Duty
(a) an actor ordinarily has a duty to exercise reasonable care when the actor's conduct creates a risk of physical harm.

(b) in exceptional cases, when an articulated countervailing principle or policy warrants denying or limiting liability in a particular class of cases, a court may decide that the defendant has no duty or that the ordinary duty of reasonable care requires modification.
Subsection (b) of Section 7 appears to me to be contrary to the "mother" of all of Florida's "foreseeable zone of risk cases," Kaisner v. Kolb, 543 So.2d 732, 735 (Fla. 1989), quoted with approval in Whitt.

*317 [E]ach defendant who creates a risk is required to exercise prudent foresight when others may be injured as a result. This requirement of reasonable, general foresight is the core of the duty element. For these same reasons, duty exists as a matter of law and is not a factual question for the jury to decide: duty is the standard of conduct given to the jury for gauging the defendant's factual conduct. As a corollary, the trial and appellate courts cannot find a lack of duty if a foreseeable zone of risk more likely than not was created by the defendant. [emphasis supplied.]
788 So.2d at 217.
In the view of the new draft Restatement, this categorical view of the "foreseeable zone of risk" would have to be wrong. According to the Restatement:
[I]n some categories of cases, reasons of principle or policy dictate that liability should not be imposed. In these cases, courts use the rubric of duty to apply general categorical rules withholding liability.
Id. at 90. There are many examples given, including "relational limitations:"
Courts sometimes use the rubric of duty to decide whether an otherwise negligent actor should be liable to a class of persons in a certain relationship. For example, a property owner who creates a hazard might be liable to persons lawfully on the property, but not to a trespasser.
Id. at 94. In other words, the actor's conduct may be the same, the "foreseeable zone of risk" may be the same but the law recognizes differing duties owed to one class of persons or another, as a matter of policy. Foreseeable zone of risk is only part of the analysis.
The question the preceding discussion begs is what constitutes an "actor's conduct" that "creates" the zone of risk. In this case, of course, and in the class of landowner cases we are concerned with, the landowner has engaged in no "conduct." He has created no risk. The foliage grows and he has simply failed to cut it down. The Whitt court acknowledges that a landowner has not "created" the obstructing natural condition and that "early supporters of the rule" believe that he is therefore "free from any duty to change or maintain it in order to prevent harm." 788 So.2d at 214. One of the mysteries of Whitt is what "conduct" on the part of the defendant has created the zone of risk. In our case, no "conduct" on the part of the Williams is alleged, only ownership.
Section 37 of the Draft is entitled, "No Duty of Care with Respect to Risks Not Created by Actor." That section provides:
An actor whose conduct has not created a risk of physical harm to another has no duty of care to the other unless a court determines that one of the affirmative duties provided in §§ 38-44 is applicable.
Id. at 709. In comment F of that section entitled, "The Role of Foreseeability," the following explanation appears:
Section 7, comment J, rejects the use of unforeseeability as a ground for deciding that no duty exists. Conversely, foreseeable harm, even highly foreseeable harm, does not affect the no-duty rule in this section. Equally important, categorical foreseeabilityassessing foreseeability for a class of caseswhich is rejected in Section 7, comment J, as a basis for deciding that no duty exists, is equally unsound as a basis for recognizing an affirmative duty as an exception to this Section.
Id. at 715. A comparison of these two concepts is summarized in comment L of Section 7, entitled "Relationship with Affirmative *318 Duties to Act." Id. at 99. The comment says that "[t]he general duty rule contained in this Section is conditioned on the actor's having engaged in conduct that creates a risk of physical harm." Section 37 states the obverse of this rule: In the absence of conduct creating a risk of harm to others, an actor ordinarily has no duty of care to another. To simplify: If an actor acts negligently, it is presumed that he is liable for injuries within the zone of risk, unless a policy limits liability. If the claim of negligence is the failure to act, presumptively, there is no negligence unless some policy imposes the duty. The reporters' notes to Comment L of Section 7 provides this test:
One useful characterization of whether an actor has created a risk as distinguished from whether a pure affirmative duty is at issue is to consider whether, if the actor had never existed, the harm would not have occurred.
Id. at 113, citing Leo Katz, BAD ACTS AND GUILTY MINDS, 143 (1987). Clearly, in the facts before us, if the Williams had never existed, the accident would nevertheless have occurred.
This case is not one where a zone of risk analysis works. Either the duty is created as a matter of policy or a rule of "no duty" prevails. From the standpoint of the Restatement Third's Draft, no matter whether Mr. and Mrs. Williams can be characterized as "actors," liability is controlled by a policy determination.
For all the reasons set forth in my original dissent, there should be no "duty" imposed on landowners such as the Williams to trim or eliminate foliage in order to assure clear visibility to motorists on adjacent roads. If the Whitt court felt constrained by Kaisner's "foreseeable zone of risk" analysis to impose such a duty, perhaps the re-articulation of tort law as reflected in the new draft Restatement frees us all to begin the debate anew.
NOTES
[1] The other defendants are Dollar Rent A Car Systems, Inc., Walden Auto Leasing, III, Inc., JSK Trucking, Inc., Jose Das Garcia Guimaraes, Diamond Transportation Services, Inc., Orange County Board of County Commissioners, Melanie Winn and Shafter Williams. On July 16, 1999, Beverly Williams filed a Suggestion of Death of Shafter Williams, her deceased husband, who apparently died in June 1998.
[2] We note, parenthetically, that this view is in accord with federal decisions interpreting Rule 36 of the Federal Rules of Civil Procedure, which is substantially similar to rule 1.370. See In re Olympia Holding Corp., 189 B.R. 846 (Bankr.M.D.Fla.1995); Golden Valley Microwave Foods, Inc. v. Weaver Popcorn Co., Inc., 130 F.R.D. 92 (N.D.Ind.1990).
[1] I do agree that the question be certified to the supreme court as a matter of great public importance.
[2] On July 16, 1999, Beverly Williams filed a Suggestion of Death of Shafter Williams, who apparently died in June 1998.
[3] This portion of the opinion appears to have been influenced by the dissent of Judge Schwartz in Evans v. Southern Holding Corp., 391 So.2d 231, 232-34 (Fla. 3d DCA 1980)(Schwartz, J. dissenting). In his dissent, Judge Schwartz posited that a landowner should be subject to liability if anything on his property, no matter whether natural or artificial, has created an obstruction of the view of persons outside the land. Id. at 233. He suggested that it was up to a jury to decide whether the landowner's use of his land was reasonable in light of what was happening or might reasonably be expected to happen outside the land.
[4] This is the analysis that led the Supreme Court of Illinois to reach a different conclusion about a landowner's liability on facts similar to those in Whitt. In Ziemba v. Mierzwa, 142 Ill.2d 42, 153 Ill.Dec. 259, 566 N.E.2d 1365 (1991), a case acknowledged in Whitt, the Illinois court refused to find a duty on a landowner to maintain their property so as to not obstruct the view of travelers precisely because it required the owner to foresee third-party negligence. 153 Ill.Dec. 259, 566 N.E.2d at 1369. The Illinois court's view was that the hazard was the motorist who failed to exercise reasonable care in light of the presence of the foliage. Id. at 1368.
[5] The supreme court said in Clay Elec. Co-op. v. Johnson, 873 So.2d 1182 (Fla.2003):

It is well settled in Florida that
[f]oreseeability clearly is crucial in defining the scope of the general duty placed on every person to avoid negligent acts or omissions. Florida, like other jurisdictions, recognizes that a legal duty will arise whenever a human endeavor creates a generalized and foreseeable risk of harming others. As we have stated:
Where a defendant's conduct creates a foreseeable zone of risk, the law generally will recognize a duty placed upon defendant either to lessen the risk or see that sufficient precautions are taken to protect others from the harm that the risk poses.
Id. at 1192 (Pariente, J., specially concurring) (emphasis in original) (quoting McCain v. Florida Power Corp., 593 So.2d 500, 503 (Fla. 1992)).
[6] I take note of the debate between Justice Pariente and Justice Cantero in their respective opinions in Clay Electric concerning a "balancing" approach to tort liability. Compare 873 So.2d at 1193-94 (Pariente, J., concurring), with 873 So.2d at 1204, n. 24 (Cantero, J., dissenting). Perhaps this is an economic issue but surely it is even more fundamentally part of the common law's constant search for what is reasonable. Is it reasonable to base duty on foreseeability alone without any consideration of burden and social utility? Perhaps this is why foreseeable zone of risk analysis appears to be a self-fulfilling test for liability in tort. See William Drake, Foreseeable Zone of Risk: Confusing Foreseeability with Duty in Florida Negligence Law, 78 Fla. B.J. 10, 12 (2004). To say simply that any actor must eliminate the risk of his conduct without regard to any competing considerations is one thing; to say that a private landowner who fails to remove vegetation from his property so that third parties have an unobstructed view as they travel adjacent roads, without consideration of factors militating against such a rule does not seem wise. Applying the "foreseeable zone of risk" analysis to the conduct of a commercial business but not to a residential landowner's failure to remove vegetation for the benefit of the motoring public is a distinction appropriately made. Indeed, the supreme court in Whitt took cost/benefit into account by concluding that it would not "unduly burden" commercial landowners to provide safe ingress and egress. 788 So.2d at 222.
[7] The Hackett court gave examples of ordinances that had specified the exact duty of landowners in such a context, one of which is found in the Florida case of Pedigo v. Smith, 395 So.2d 615, 616 (Fla. 5th DCA 1981). 2000 WL 1862676, at *4.
[8] 391 So.2d at 234 (Schwartz, J., dissenting).
[1] Henderson v. Bowden, 737 So.2d 532 (Fla.1999); Florida Power & Light Co. v. Periera, 705 So.2d 1359, 1361 (Fla.1998) ("The proper way of determining whether a duty existed is to decide whether the defendant's actions created a foreseeable zone of risk, not by whether the specific injury suffered was foreseeable by the defendant."); City of Pinellas Park v. Brown, 604 So.2d 1222 (Fla.1992); Gibbs v. Hernandez, 810 So.2d 1034, 1037 (Fla. 4th DCA 2002) (holding that in order to determine whether a duty was owed in a negligence case, "`the proper inquiry for the reviewing appellate court is whether the defendant's conduct created a foreseeable zone of risk....'") (quoting McCain v. Florida Power Corp., 593 So.2d 500 (Fla.1992)) (emphases deleted); Hitchcock v. F.S. Disposition, Inc., 704 So.2d 1118, 1120 (Fla. 2d DCA 1998) ("The supreme court in McCain v. Florida Power Corp., 593 So.2d 500 (Fla.1992), clarified the standard which trial and appellate courts must apply in determining foreseeability issues under these elements. The court explained that in the duty element the focus is on `whether the defendant's conduct foreseeably created a broader `zone of risk' that poses a general threat of harm to others.'"); Creamer v. Sampson, 700 So.2d 711, 713 (Fla. 2d DCA 1997) ("A proper analysis requires that we consider the dichotomy of foreseeability principles set out in McCain v. Florida Power Corp., 593 So.2d 500 (Fla.1992).... Our analysis here is concerned only with the duty element of foreseeability which is the legal threshold requirement `for opening the courthouse doors.' We must determine whether the allegations of the complaint are sufficient to satisfy the duty element of negligence."); Napoli v. Buchbinder, 685 So.2d 46 (Fla. 4th DCA 1996); White v. Whiddon, 670 So.2d 131 (Fla. 1st DCA 1996) (holding that the proper inquiry to determine whether a duty was owed is to apply the foreseeable zone of risk standard); Powers v. Ryder Truck Rental, Inc., 625 So.2d 979, 980 (Fla. 1st DCA 1993) ("This is a threshold legal requirement; thus, as to duty, the appellate court must determine only whether the defendant's conduct created a foreseeable zone of risk."); Stazenski v. Tennant Co., 617 So.2d 344, 346 (Fla. 1st DCA 1993) ("In McCain v. Florida Power Corp., 593 So.2d 500 (Fla.1992), the supreme court discussed the appropriate legal analysis in determining the existence of a duty.... The duty issue is resolved by determining whether the defendant created a generalized and foreseeable risk of harming others."); Kowkabany v. Home Depot, Inc., 606 So.2d 716, 720 (Fla. 1st DCA 1992) ("Although McCain and the case at hand are factually dissimilar, we find the supreme court's analysis of duty to be not only instructive but controlling on the duty issue raised in the instant case."); see also Dykes v. City of Apalachicola, 645 So.2d 50, 52 (Fla. 1st DCA 1994) ("The general test for determining whether a duty exists to support a negligence action is whether a defendant's conduct creates a foreseeable zone of risk.").
[2] The court in Whitt totally rejected the rationale of Pedigo when it dismissed the argument that the focus should be on the motorist's and not the landowner's negligence. The court explained:

The landowner here asserts that if this Court recognizes any duty on his part, landowners will in essence be delegated the role of insurers for motorists using their adjoining roadways and that imposing this duty will relieve motorists of their established duty of care. However, as has been noted quite often, the imposition of a duty is nothing more than a threshold requirement that if satisfied, merely opens the "courthouse doors." Once this duty is satisfied, an injured party must still prove the remaining elements of a negligence claim, including the much more specific proximate cause requirement. Hence, the burden remains with a claimant to establish the elements of a negligence claim against a defendant-landowner before being entitled to recover damages. Moreover, the imposition of a duty of care upon landowners will not relieve motorists of a duty because in Florida, even if a landowner breaches her duty of care, a plaintiff's award will be offset by the percentage of fault attributable to him in comparison to the fault of others, including the landowner.
Whitt, 788 So.2d at 221 (citations omitted).
[3] The courts that adhere to the natural versus artificial distinction give the term "natural condition" a very narrow definition. In Jackson v. City of Blue Springs, 904 S.W.2d 322 (Mo.Ct.App. 1995), the court explained:

[C]ontrary to what may be the case in some other contexts, vegetation is not necessarily a "natural" condition. To the contrary, (and perhaps to ensure that the limitation of liability to "artificial" conditions was not extended to situations in which the landowner had created, maintained, or exacerbated the risk of harm), what constitutes a "natural" condition has always been very narrowly defined to include only conditions that are not in any way the result of human activity. Natural conditions thus include soil that has not been cultivated, graded or otherwise disturbed as well as trees, weeds and other vegetation growing on land that has not been made artificially receptive to it by an act of man.
Everything which does not fall within this definition of a "natural" condition, even if it constitutes vegetation, is an "artificial" condition of the land and, under the rules noted above, liability can result if that condition causes an unreasonable risk of harm to persons outside the land. This includes not just buildings and structures, but also vegetation that is planted by the landowner or was planted by the landowner's predecessor as well as vegetation that grows on land only because the land has been plowed or made receptive to it, although the vegetation has not been planted or cultivated by anyone.
Id. at 330 (citations omitted) (emphasis in original). The court also explained, using the example of a tree, why the distinction between natural and artificial conditions has been criticized and rejected by most courts. The reasons include
the virtual impossibility of obtaining evidence concerning the origin of trees in many instances; the unfairness in imposing liability upon one who plants or nurtures a tree to a stately and aesthetic appearance while excusing one who neglectfully permits the growth of unsightly scrubs; [and] the problems inherent in assessing the effect of human intervention by watering, fertilizing, pruning, etc.
Id. at 333-34 (quoting Hasapopoulos v. Murphy, 689 S.W.2d 118, 119-20 (Mo.Ct.App. 1985)); see also Sprecher v. Adamson Cos., 30 Cal.3d 358, 178 Cal.Rptr. 783, 636 P.2d 1121 (Cal.1981); Harvey v. Hansen, 299 Pa.Super. 474, 445 A.2d 1228 (Pa.Super.Ct.1982).
[4] RESTATEMENT (THIRD) OF TORTS, LIABILITY FOR PHYSICAL HARM (PROPOSED FINAL DRAFT NO. 1, 2005).