## MARY WELLER v. BARTHOLOMEW McCORMICK.

1. In a city where for a long time the municipality has, by its charter, had authority to plant, rear, trim and preserve ornamental shade trees in the streets, proof that a defendant owns and occupies the lot in front of which such a tree stands on the street, is not sufficient evidence that he planted or maintains the tree for his own uses, so as to charge him with the duty of trimming the same, and with responsibility for injury received by the plaintiff upon whom a neglected rotten limb had fallen.

2. Where a municipal corporation, under its charter, plants or maintains shade trees on the sidewalks of its streets, the owners or occupants of the adjoining premises are not charged with the duty of properly trimming the trees, in the absence of any statute or municipal regulation imposing that duty upon them.

3. The old English rule that, if an occupant of land along a highway enclosed his land, so that travelers could not pass over it when the road was out of repair, he thereby became bound to keep the highway in good order, does not prevail in New Jersey.

On rule to show cause why a new trial should not be had, certified from the Middlesex Circuit.

Argued at June Term, 1885, before BEASLEY, CHIEF JUSTICE, and Justices DIXON and MAGIE.

For the plaintiff, *Chas. T. Cowenhoven.*

For the defendant, *R. Adrain* and *Alan H. Strong.*

The opinion of the court was delivered by

DIXON, J.    On September 27th, 1881, the defendant became the owner of a hotel on the corner of Somerset and

George streets, in the city of New Brunswick, his title extending to the middle of the street. On the sidewalk of George street, in front of his premises, an elm tree was growing, and on January 21st, 1883, the plaintiff, while passing along the sidewalk, was injured by a limb that fell from the tree. The plaintiff sued the defendant for the damages so sustained, and recovered on the theory that the facts above stated created a duty on the part of the defendant to use proper care towards trimming the tree, so that travelers would not be endangered thereby.

Whether these circumstances give rise to such a duty is the first question discussed before us on the motion for a new trial.

It must be conceded that ordinarily, when a person, for his private ends, places or maintains, in or near a highway, anything which, if neglected, will render the way unsafe for travel, he is bound to exercise due care to prevent its becoming dangerous. If, therefore, from the fact that the tree in question stood on a portion of George street owned by the defendant, it is to be inferred that the tree was placed or maintained there by him for his private benefit, it would follow that the alleged duty existed. But we think that in the present case this fact is not sufficient to warrant such an inference against the defendant.

Shade trees in the streets of a city are of public as well as private, utility. They protect and ornament the way for public use, as they also do the adjoining property for private enjoyment. It is therefore clear that, by virtue of the ordinary public right in highways, the public may plant and maintain shade trees therein. Whether the legislature, to whom this power primarily belongs, has in a given case delegated it to a subordinate, depends of course upon the terms by which authority is granted. In the charter of the city of New Brunswick the matter is not left in doubt. That instrument (*Pamph. L.* 1863, *p.* 347, § 31,) gives the common council power to make, modify and repeal ordinances, rules, regulations and by-laws for directing and regulating the planting,

rearing, trimming and preserving of ornamental shade trees in the streets, parks and grounds of the city. It thus appears that since 1863 the municipality has had the power of planting and preserving shade trees in the streets, and therefore the presence of any such tree in a street may be attributed to the exercise of this power as well as to any other cause. Under these circumstances the most that the plaintiff can properly claim to have proved is that the tree was planted or maintained either by the defendant for private purposes or by the city for public purposes. This is inadequate to the necessities of the plaintiff's position, for a plaintiff must show by a preponderance of evidence, not that either the defendant or some disconnected third party is responsible, but that the defendant is responsible.

The verdict therefore cannot be supported on an inference that the tree was planted or maintained by the defendant.

But if the tree was planted or maintained by the city, would the law then cast upon the defendant as owner or occupant of the abutting premises the duty of taking care that the tree should not endanger travelers?

At common law the duty of keeping highways safe for travel pertained, ordinarily, to the parish at large. *Rex* v. *Sheffield*, 2 *T. R.* 106. But since the traveler might, when the highway became unsafe, pass over the adjoining private property, the tenant of that property, if he chose to inclose it so as to exclude the traveler, became bound to keep the road in front of his premises repaired. *Sir Edward Dunscomb's case, Cro. Car.* 366 ; 2 *Sm. Lead. Cas.* (*Dovaston* v. *Payne, note,*) *205. If this doctrine has been adopted in our jurisprudence, and is applicable in cities, it would seem to go far towards establishing the defendant's liability. For the case shows that the adjoining premises were used by him as a hotel, a use inconsistent with a right of free passage round a dangerous portion of the street. But I think the doctrine in question forms no part of our legal system. From very early times our state policy has encouraged the building of fences, and the people have been accustomed to enclose their lands

along public roads. Yet the burden of maintaining highways has always been borne by the public with means raised under the taxing power, and no instance, I think, can be found in which either a private or a public prosecution has been sustained against an occupant of the adjoining enclosure for a mere omission to repair the road. It is now a well-settled principle that the expense of keeping and improving highways cannot be charged upon the owners of abutting lands, whether inclosed or not, merely because of their frontage, and this negatives the idea that the old English rule is in force among us.

A distinction, however, has been drawn between the road in general and the sidewalk. Probably in consideration of the peculiar privilege usually accorded to the owner of land to use the adjacent sidewalk for stoops, areas, shutes, and other domestic and trade conveniences, he has been held chargeable with the whole expense of maintaining this portion of the road. *Paxson* v. *Sweet*, 1 *Green* 196; *State, Agens, pros.*, v. *Newark*, 8 *Vroom* 415; *Kirkpatrick* v. *Commissioners*, 13 *Vroom* 510; *Robins* v. *New Brunswick*, 15 *Vroom* 116. Still, even this liability has not been extended beyond the limits fixed by express legislation. No case has intimated that if the owner or occupant of the abutting premises had not in any way interfered with the side of the road, and had had no duty enjoined upon him in regard to it by statute or lawful municipal regulation, he was under an obligation to render it fit or safe for passage. Since the private duty is enforced mainly for public benefit, and seems to form an exception to the rule that public advantage should be secured at public cost, it ought not to be enlarged beyond the bounds already indicated.

My conclusion therefore is, that if the tree in question was planted or preserved by the city, the defendant owed no duty concerning it, except such as was imposed by the by-laws of the corporation. As no by-law was offered in evidence at the trial, the verdict cannot rest on this basis.

The rule to show cause should be made absolute, for want of proof that the defendant was bound to take care of the tree.