541 So.2d 624 (1988)
SILVER PALM PROPERTIES, INC., Appellant,
v.
Mary Sharon SULLIVAN and Robert Stevens, Jr., Appellees.
No. 87-51.
District Court of Appeal of Florida, Third District.
July 5, 1988.
On Motion for Rehearing and Rehearing Denied May 2, 1989.
Gaebe, Murphy & Mullen and Michael J. Murphy, Coral Gables, for appellant.
Joe N. Unger; Robert E. Schack, P.A., Miami, Coral Gables, for appellees.
Before BARKDULL, NESBITT and JORGENSON, JJ.
On Motion for Rehearing and Rehearing En Banc Denied May 2, 1989.
JORGENSON, Judge.
In this case we are called upon to determine the duty of a landowner to regulate the growth of roots from trees growing on his land, where the roots extended beneath the adjacent public right-of-way. We conclude that a landowner does not have a duty to retard the subterranean root growth of his trees, and, therefore, reverse the final judgment against Silver Palm Properties, Inc.
In 1981, Robert Stevens, Jr., was driving with a passenger, Mary Sharon Sullivan, on a two-lane paved road in an agricultural section of Dade County. The road had been built and maintained by the county. Stevens's car hit a series of bumps submerged in rainwater on the road's surface. Stevens lost control of his vehicle, which swerved to the left and crashed into a tree several hundred feet away. As a result of *625 the accident, Stevens sustained facial injuries, and Sullivan, back injuries.
In 1983, Sullivan brought a negligence action against Silver Palm and Kendall Foods Corporation, the owners of property adjacent to the accident site. In her complaint, Sullivan alleged that Silver Palm had a duty to maintain the trees on its property so that "subterranean growth" would not cause dangerous bumps, cracks, and protrusions in the adjacent road. She further alleged that Silver Palm was negligent in allowing the trees to grow in such a manner as to damage the roadway and in failing to inspect, discover, and/or repair the area, and that Silver Palm knew or should have known of the condition of the road "and therefore had a duty to take action reasonably calculated to correct the dangerous conditions created by [its] actions or inactions." Sullivan subsequently joined Stevens, Metropolitan Dade County, and Florida Farm Bureau Casualty Insurance as defendants. The trial court granted Kendall Foods' motion for summary judgment. The parties' first trial ended in a mistrial.
The following facts germane to our disposition of the case were adduced at the second trial or found in the record. Since 1974, Silver Palm has owned the avocado grove adjacent to the road where the accident occurred. Approximately fifty to seventy years earlier, Australian pine trees had been planted alongside the grove as windbreaks to reduce wind damage to the fruit growing in the groves. Silver Palm had never trimmed or pruned the trees. The trees were not originally located immediately adjacent to the road but became proximate when Dade County widened and resurfaced the road in 1974. A mechanical engineer testifying as an expert witness for Sullivan stated that approximately three and one-half to four feet of pavement were uprooted and broken up to a height of five or six inches because of the growth of roots from the pine trees on Silver Palm's property. Another expert witness who had worked in nurseries and in the fields of horticulture and agriculture since 1948, corroborated the engineer's testimony regarding the dislocation of the pavement. The expert then elaborated upon four methods known to horticulturists to prevent the growth and spread of tree roots. Two of the methods would kill the tree outright. In a third method, topping, limbs are cut away to reduce the height of the pine tree from about thirty feet to six feet. In a fourth method, root trenching, a trench is dug parallel to the roadway, severing the roots of the tree. The horticulturist further testified that he had seen only Dade County perform such work and had never known of any company, individual, or landowner who had done root work on pine trees within fifteen feet of the roadway. No testimony was elicited concerning at what point in the past the topping method would have to have been performed in order to retard the root growth of the Australian pine trees and thereby prevent the pavement from buckling and cracking.
The horticulturist also testified that an improper procedure was used on the tree roots when the county widened the road in 1974. Dade County merely scraped over the tops of the existing roots when, according to Sullivan's expert, root trenching should have been used. Had the county root trenched properly in 1974, the trenching would have retarded root growth for approximately ten years, well beyond the date of the accident. Dade County stipulated that it had prior actual knowledge of the condition of the road. It also stipulated to its ownership of the road and its responsibility to maintain and repair it.
Sullivan accepted Dade County's settlement offer of $50,000 just after the jury had retired for deliberation. The jury returned a verdict finding Silver Palm 22.5% negligent; Dade County, 15% negligent; and Stevens, 62.5% negligent. The trial court denied Silver Palm's renewed motions for a directed verdict/mistrial/new trial on all claims and entered a final judgment in favor of Sullivan and against Silver Palm and Florida Farm Bureau Casualty Insurance Company in the amount of $200,000. This appeal ensued.
Sullivan urges that our decisions in Armas v. Metropolitan Dade County, 429 So.2d 59 (Fla. 3d DCA 1983), and Morales *626 v. Costa, 427 So.2d 297 (Fla. 3d DCA), rev. denied, 434 So.2d 886 (Fla. 1983), control the case now before us. In Morales, a motorist was injured when he ran a stop sign situated on a public right-of-way but obscured by a tree planted by the landowner on the landowner's property. On the grounds that users of a public right-of-way have a right to expect that the roadway will not be unreasonably obstructed, we held that a landowner may incur liability for damages caused by "something which grows and exists upon a private property, but which protrudes into and obstructs the public right-of-way." 427 So.2d at 298. Armas also involved injuries sustained in an intersection accident where the motorist's view of the stop sign was obstructed by foliage growing from the adjacent lot onto the public right-of-way. The trial court entered summary judgment in favor of the landowner. We reversed upon the authority of Morales.
In both Morales and Armas, we relied on the early supreme court decisions of Gulf Refining Co. v. Gilmore, 112 Fla. 366, 152 So. 621 (Fla. 1933), and Price v. Parks, 127 Fla. 744, 173 So. 903 (Fla. 1937). Notwithstanding the broad dictum in Price adverted to by the dissent, Price and its progeny have dealt almost exclusively with the liability of contractors in creating dangerous highway conditions. Price held that
[i]f harm is caused by the dangerous condition of a highway or public bridge held open for public travel, the right of action of the person harmed may be enforced against a contractor shown to have occasioned a dangerous condition of said highway or bridge by allowing materials from his vehicles to fall and negligently to accumulate on same, even though such contractor has assumed no duty to maintain or keep the highway or bridge in repair.
173 So. at 904. Significantly, Price contains no reference to the supreme court's earlier decision in Gulf. In any event, the following line of cases clearly indicates that Florida courts have read Price far more narrowly than the dissent suggests. See Slavin v. Kay, 108 So.2d 462 (Fla. 1959) (where owner has not assumed risk of defect or danger, no intervening fault exists to sever causal relationship between contractor's negligence and injury); Smith Eng'g & Constr. Co. v. Cohn, 94 So.2d 826 (Fla. 1957) (contractor liable for damages when truck overturned due to contractor's negligence in replacing portion of roadbed); Zilber Cab Co. v. Capeletti Bros., Inc., 303 So.2d 360 (Fla. 3d DCA 1974) (where highway is under construction and has not been completed or accepted, contractor has duty to maintain road in reasonably safe condition); Finley P. Smith, Inc. v. Schectman, 132 So.2d 460 (Fla. 2d DCA 1961) (contractor liable for damages when truck overturned due to contractor's negligence in replacing portion of roadbed). Cf. Carter v. Livesay Window Co., 73 So.2d 411 (Fla. 1954) (en banc) (building contractor who creates inherently dangerous condition liable for resulting injuries). But see Tims v. Orange State Oil Co., 161 So.2d 844 (Fla. 2d DCA 1964) (gas station owner liable for motorist injuries caused by collision with large grease rack left in roadway by owner).
Despite Sullivan's contention, we cannot agree that the circumstances surrounding her accident are factually indistinguishable from Morales and Armas. In the latter cases, common sense required that a duty be imposed upon the landowner to remove landscaping which obstructed critical traffic signage. Vegetation that overhangs and blocks out a traffic control device constitutes an obvious condition and presents an imminent danger of uncontrolled traffic. The offending branch, moreover, need only be clipped away, a straightforward remedy. We have no quarrel with the dissent's reliance on Weller v. McCormick, 47 N.J.L. 397, 1 A. 516 (1885), appeal after remand, 52 N.J.L. 470, 19 A. 1101 (1890), as Weller also involves the liability of a landowner for injuries resulting from overhanging vegetation.
Unlike Weller, Morales, and Armas, in the case now before us the offending vegetation was anything but obvious. The root growth was slow and subterranean; the defect in the right-of-way became noticeable only after a considerable passage *627 of time; and the remedy was known only to horticulturists and practiced only by a governmental entity. All parties stipulated that Dade County, not Silver Palm, owned and maintained the roadway shoulder and surface in the area of the accident. Silver Palm had no right at any time to repair or alter the surface of the roadway. To hold a landowner liable for failing to clip back vegetation that has overgrown a traffic control device is reasonable. To impose upon a landowner a duty to undertake root trenching or tree topping purely in anticipation that subterranean growth may alter the surface of a public right-of-way at some indeterminate time in the future is both burdensome and unreasonable.
Because we find no duty on the part of Silver Palm, we need not address its remaining points on appeal.
Reversed.
BARKDULL, J., concurs.
NESBITT, Judge (dissenting):
I respectfully dissent. It is well settled that a private person may incur liability for damages caused by an obstruction of a public right-of-way. This rule was established in Florida in Gulf Refining Co. v. Gilmore, 112 Fla. 366, 152 So. 621 (1933) and affirmed in Price v. Parks, 127 Fla. 744, 173 So. 903 (1937). In Price, the supreme court stated, "A person causing a defect or obstruction in a traveled public way ... is liable in damages to an injured automobilist for injuries caused by such defects or obstruction, where the defect or obstruction was occasioned by the affirmative act or positive neglect of the defendant ... even though no general duty of maintenance has been assumed by the defendant, or exists on his part." Id. 173 So. at 903-904.
Later cases have applied this rule to injuries caused by vegetation obscuring a public right-of-way. In Morales v. Costa, 427 So.2d 297 (Fla. 3d DCA), review denied, 434 So.2d 886 (Fla. 1983), this court held that an obstruction of a public right-of-way by an adjacent landowner, even by vegetation which grows and exists on private property, but which protrudes into and obstructs the public right-of-way, may subject the landowner to liability. The court stated, "The users of a public right-of-way have a right to expect that it will not be unreasonably obstructed." Id. at 298. In Morales, the plaintiff motorists recovered damages for injuries suffered in an accident caused by a tree planted on the defendant's private property which obscured the view of a stop sign. In Armas v. Metropolitan Dade County, 429 So.2d 59 (Fla. 3d DCA 1983), a case involving facts almost identical to those in Morales, this court again affirmed the rule.
The majority holds that we should disregard this long line of precedent because here we are dealing with road obstruction caused by underground growth while the cited cases only apply to injury caused by above ground growth and related obstructions. I believe the law to be clear and unambiguous, to be broad enough to apply to the facts before us, and to be controlling of the disposition of this case. As stated in the nineteenth century case of Weller v. McCormick, 47 N.J.L. 397, 1 A. 516 (1885), appeal after remand, 52 N.J.L. 470, 19 A. 1101 (1890) involving a similar obstruction of a roadway by tree vegetation, "[W]hen a person, for his private ends, places or maintains, in or near a highway, anything which, if neglected, will render the way unsafe for travel, he is bound to exercise due care to prevent its becoming dangerous." I would hold that this basic tenet is clearly still the law today and that when this law is applied to the facts of this case, the appellant was rightly found to be liable for any damages caused by its failure to check the spread of the root growth.
Before SCHWARTZ, C.J., and BARKDULL, HUBBART, NESBITT, BASKIN, FERGUSON, JORGENSON, COPE and LEVY, JJ.

ON MOTION FOR REHEARING
PER CURIAM.
The motion for rehearing is denied.
*628 BARKDULL and JORGENSON, JJ., concur.
NESBITT, J., dissents.

ON MOTION FOR REHEARING EN BANC
PER CURIAM.
The court, having heard argument on rehearing en banc, adheres to the panel opinion filed July 5, 1988.
It is certified to the Florida Supreme Court that this case involves the following question of great public importance:
DOES A LANDOWNER HAVE A DUTY TO RETARD THE SUBTERRANEAN ROOT GROWTH OF ITS TREES WHICH ARE LOCATED ADJACENT TO A PUBLIC RIGHT OF WAY?
BARKDULL, HUBBART, FERGUSON, JORGENSON and COPE, JJ., concur.
NESBITT, Judge (dissenting):
I respectfully dissent. It is well settled that a private person may incur liability for damages caused by an obstruction of a public right-of-way. This rule was established in Florida in Gulf Refining Co. v. Gilmore, 112 Fla. 366, 152 So. 621 (1933) and affirmed in Price v. Parks, 127 Fla. 744, 173 So. 903 (1937). In Price, the supreme court stated, "A person causing a defect or obstruction in a traveled public way ... is liable in damages to an injured automobilist for injuries caused by such defects or obstruction, where the defect or obstruction was occasioned by the affirmative act or positive neglect of the defendant ... even though no general duty of maintenance has been assumed by the defendant, or exists on his part." Id. 173 So. at 903-904.
There are a number of ways in which a public road can be obstructed. One line of cases, cited extensively by the majority, refers to artificial obstructions. Another line of cases refers to natural vegetation obstructing a public way. In Morales v. Costa, 427 So.2d 297 (Fla. 3d DCA), review denied, 434 So.2d 886 (Fla. 1983), this court held that an obstruction of a public right-of-way by vegetation which grows and exists on private property, but which protrudes into and obstructs the public right-of-way by vegetation which grows and exists on private property, but which protrudes into and obstructs the public right-of-way, may subject a landowner to liability. The court stated, "The users of a public right-of-way have a right to expect that it will not be unreasonably obstructed." Id. at 298. In Morales, the plaintiff motorists recovered damages for injuries suffered in an accident caused by the branches of a tree planted on the defendant's private property which obscured the view of a stop sign. In Armas v. Metropolitan Dade County, 429 So.2d 59 (Fla. 3d DCA 1983), a case involving facts almost identical to those in Morales, this court again affirmed the rule.
The majority holds that we should disregard this long line of precedent because here we are dealing with road obstruction caused by underground growth while the cited cases apply only to injury caused by above ground growth and other obstructions. I believe the law to be clear and unambiguous, to be broad enough to apply to the facts before us, and to be controlling of the disposition of this case.
It is elementary knowledge that a tree not only grows branches above ground, but also extends roots below ground. Consequently, just as a landowner has a duty to control his plants so that their above ground growth does not extend into a public right-of-way and cause injury, so a duty *629 must exist to control the plants' root growth. The majority infers that even if it were to find a duty existed, the landowner here could not have undertaken to control the root growth without interfering with the county's right-of-way. However, the record shows that there was no stipulation or proof that the shoulder which the county maintained extended to the base of the trees; thus, it was within the jury's province to find that sufficient space remained between the county's right-of-way and the tree line in which the landowner could have root trenched. Moreover, it was established at trial that the root growth could have been stunted by topping off the trees, a second procedure which would not have interfered at all with the county's right-of-way.
Thus, the issue of negligence was properly submitted to the jury. Upon recognizing the existence of a duty and its breach, the jury could then decide the degree of responsibility the defendant should bear for the injury which resulted from its failure to reasonably carry out its duty. In this case, the jury was totally within its province in apportioning liability as it did among the defendant landowner, the county, and the automobile driver.
The rule applicable to this case was succinctly set out in the nineteenth century case of Weller v. McCormick, 47 N.J.L. 397, 1 A. 516 (1885), appeal after remand, 52 N.J.L. 470, 19 A. 1101 (N.J. 1890) involving a similar obstruction of a roadway by tree vegetation, "[W]hen a person, for his private ends, places or maintains, in or near a highway, anything which, if neglected, will render the way unsafe for travel, he is bound to exercise due case to prevent its becoming dangerous." I would hold that this basic tenet is clearly still the law today and that when this law is applied to the facts of this case, the appellant was rightly found to be liable for damages caused by its failure to take reasonable steps to check the spread of the root growth.
Accordingly, I dissent with the result reached by the majority, but fully concur with certifying the issue presented to the Supreme Court of Florida as one of great public importance.
SCHWARTZ, C.J., and BASKIN and LEVY, JJ., concur.