974 So.2d 1052 (2007)
Beverly WILLIAMS, Petitioner,
v.
Cecelia DAVIS, et al., Respondents.
No. SC05-1817.
Supreme Court of Florida.
November 21, 2007.
*1054 Jack W. Shaw, Jr., Winter Park, FL, for Petitioner.
Diran V. Seropian of Peterson Barnard, West Palm Beach, FL, Edna L. Caruso, West Palm Beach, FL, and Charles E. Emanuel of Gary, Williams, Parenti, Finney, Lewis, McManus, Watson and Sperando, Stuart, FL, for Respondents.
ANSTEAD, J.
We have for review a decision of the Fifth District Court of Appeal posing a question which the court certified to be of great public importance:
DOES THE FORESEEABLE ZONE OF RISK ANALYSIS ESTABLISHED IN MCCAIN [V. FLORIDA POWER CORP., 593 So.2d 500 (Fla.1992),] APPLY TO PRIVATE OWNERS OF NON-COMMERCIAL PROPERTY CONTAINING FOLIAGE THAT BLOCKS MOTORISTS' VIEW OF AN ADJACENT INTERSECTION AND CAUSES AN ACCIDENT WITH RESULTING INJURIES?
Davis v. Dollar Rent A Car Sys., Inc., 909 So.2d 297, 305 (Fla. 5th DCA 2004). We have jurisdiction. See art. V, § 3(b)(4), Fla. Const. For purposes of our review we reword the question certified:
DOES THE FORESEEABLE ZONE OF RISK ANALYSIS ESTABLISHED IN MCCAIN V. FLORIDA POWER CORP., 593 So.2d 500 (Fla.1992), APPLY TO PRIVATE OWNERS OF RESIDENTIAL PROPERTY CONTAINING FOLIAGE THAT DOES NOT EXTEND INTO THE PUBLIC RIGHT-OF-WAY SO AS TO CREATE A DUTY BY THE LANDOWNER TO ADJACENT MOTORISTS?
We answer the reworded certified question in the negative and hold that while the McCain foreseeable zone of risk analysis applies, we conclude that under that analysis owners of private property do not owe a duty to motorists on abutting roadways as to the maintenance of foliage located wholly within the bounds of the property. We do recognize, however, that all property owners owe a duty, under a McCain analysis, not to permit the growth of foliage on their property to extend outside the bounds of the property and into the public right-of-way so as to interfere with a motorist's ability to safely travel on the adjacent roadway.

*1055 Circumstances of This Case
The facts and history of the case are set out in the district court's opinion in Davis. Twanda Green, an employee of Diamond Transportation Services, Inc., was involved in a vehicular accident in Orlando while transporting vehicles in a procession from one rental car location to another. Davis, 909 So.2d at 299. Green, the driver of the fifth of six vehicles, was traveling west on Pine Street as it formed a "T" intersection with Sidney Hayes Road. As she approached, she faced a yield sign at the end of Pine Street. She was in the process of making a left-hand turn onto Sidney Hayes Road when she was struck by a dump truck approaching the intersection of Sidney Hayes Road and Pine Street. Green died from the injuries caused by the collision. Id. As personal representative of Green's estate, respondent Cecelia Davis brought this action against several defendants, including Beverly Williams, who owns residential property abutting the intersection. Id. Davis claimed that foliage on the property obstructed Green's view of other traffic as she approached the intersection. Id.
In response to this action, Williams served Davis with a request for admission asking Davis to admit or deny that Williams owed or assumed a duty of care to drivers on the abutting roadway approaching the intersection. Id. Davis did not timely respond, so the trial court entered summary judgment, concluding that Williams owed Davis no duty of care. Id. On appeal, the Fifth District reversed, finding both that Davis's failure to timely respond did not bar suit because the request for admission concerned a conclusion of law rather than an issue of fact, and that under a McCain negligence analysis, Williams owed Davis and other motorists a duty of care to maintain the foliage on the property so as not to restrict the visibility of motorists at the intersection. Id. at 304-05.[1]
While the district court opinion refers to "overgrown foliage" and "obstructing foliage," id. at 303-04, 313, we find no indication in the record or in the briefs of the parties that Davis is claiming that the foliage on Williams' property actually extended outside the bounds of the property *1056 or into the right-of-way. Because that factual issue is critical to our analysis, we are assuming there is no claim of intrusion into the public right-of-way. However, that issue's resolution will be left to further proceedings below. As noted by the district court, because this case is on review of the grant of a summary judgment, any doubts on this issue must be resolved in favor of Davis. See Davis, 909 So.2d at 304.

Negligence
We examine the existence of a common law duty based upon principles of negligence set forth in our case law as applied to the circumstances alleged in the complaint in this case. In McCain and other decisions, we have held that a claim of negligence requires the establishment of four elements in order for a claimant to prevail. The claimant must first demonstrate that the defendant owed a "duty, or obligation, recognized by the law, requiring the [defendant] to conform to a certain standard of conduct, for the protection of others against unreasonable risks." Clay Elec. Coop., Inc. v. Johnson, 873 So.2d 1182, 1185 (Fla.2003) (quoting Prosser and Keeton on the Law of Torts § 30, at 164 (W. Page Keeton et al. eds., 5th ed.1984)). Second, the claimant must establish that the defendant failed to conform to that duty. Id. Third, there must be "[a] reasonably close causal connection between the [nonconforming] conduct and the resulting injury" to the claimant. Id. Fourth, the claimant must demonstrate some actual harm. Id.
Florida tort law has long recognized an entirely distinct set of rules as to the duties owed by a landowner to those who come upon the property, and the law has recognized limited, if any, duties owed by a landowner to those who do not come on the property. See Wood v. Camp, 284 So.2d 691, 695 (Fla.1973); Post v. Lunney, 261 So.2d 146, 147-48 (Fla.1972); Barrio v. City of Miami Beach, 698 So.2d 1241, 1243 (Fla. 3d DCA 1997); McCray v. Myers, 614 So.2d 587, 588-90 (Fla. 1st DCA 1993). At issue is whether we should extend the McCain negligence analysis to apply to the circumstances presented herein and establish a duty on the part of the residential landowner to adjacent motorists.

McCain and the Foreseeable Zone of Risk Test
We explained in McCain that duty ordinarily arises from four general sources: "(1) legislative enactments or administration regulations; (2) judicial interpretations of such enactments or regulations; (3) other judicial precedent; and (4) a duty arising from the general facts of the case." McCain, 593 So.2d at 503 n. 2 (citing Restatement (Second) of Torts § 285 (1965)).
We further explained that the determination of the existence of a common law duty flowing from the general facts of the case under our negligence law depends upon an evaluation of the concept of foreseeability of harm. Id. at 503. We held that where a person's conduct is such that it creates a "foreseeable zone of risk" posing a general threat of harm to others, a legal duty will ordinarily be recognized to ensure that the underlying threatening conduct is carried out reasonably. Id. at 502-03.[2] As noted by the district court in *1057 Davis, 909 So.2d at 311 & n. 1, we have applied the McCain analysis to a countless variety of factual circumstances in order to determine the existence of a duty under our negligence law.[3]

Prior Rejection of Agrarian Rule of No Liability
In Whitt v. Silverman, 788 So.2d 210 (Fla.2001), we considered factual circumstances somewhat similar to those before us today, although involving commercial, rather than residential property. See id. at 212. We explained that before our McCain decision, Florida courts had followed the common law "agrarian rule" to determine whether a duty exists by landowners to motorists or others passing on a neighboring highway. Whitt, 788 So.2d at 213-14, 216. Under the strict agrarian rule, a landowner could never be held liable for harm occurring to motorists on adjacent roadways as a result of natural conditions on the land regardless of any *1058 alleged neglect of the landowner. See, e.g., Whitt, 788 So.2d at 213; Restatement (Second) of Torts § 363(1) (1965); Keeton et al., supra, § 57, at 390.[4]
In Whitt, we rejected application of the absolute no-liability agrarian rule in considering whether a commercial landowner in an urban setting owed a duty to motorists and pedestrians who might be harmed by conditions on the property. Instead, we applied the "zone of risk" foreseeability analysis articulated in McCain: "[W]e conclude that under our analysis in McCain, the landowners' conduct here created a foreseeable zone of risk posing a general threat of harm toward the patrons of the business as well as those pedestrians and motorists using the abutting streets and sidewalks. . . ." Whitt, 788 So.2d at 222. Importantly, we noted that our reliance on the McCain foreseeability test was appropriate because we had intended McCain to function "as a restatement of the law of negligence." Whitt, 788 So.2d at 218.
As is properly pointed out in both the majority and dissenting opinions below, the facts in Whitt are not identical to the facts herein. See Davis, 909 So.2d at 310-11 (majority opinion on rehearing); Davis, 909 So.2d at 307-09 (Griffin, J., concurring in part and dissenting in part). The property at issue in Whitt was a service station in Miami Beach, an urban commercial property subject to high-volume traffic. 788 So.2d at 213, 222. The plaintiffs in Whitt claimed that foliage located on the service station property impaired the visibility of the adjacent sidewalk and roadway and thereby caused an exiting motorist to fail to see two pedestrians whom the motorist struck and killed. Id. at 212-13. This Court was therefore faced with deciding whether a duty existed between the owners of the service station and pedestrians off the property to provide safe egress of vehicles from the premises, and our affirmative holding on that issue was limited to the circumstances presented:
We conclude that an inquiry as to the liability of a landowner under the circumstances presented here of a commercial business in an urban area specifically relying on the frequent coming and going of motor vehicles should be guided by a foreseeability analysis, which, as we have frequently stated, is governed by our pronouncements in McCain. In the instant case, the landowners were the owners of a commercial establishment, a service station, which by its very nature involves a continuous flow of traffic entering and exiting the premises for the commercial benefit of the landowners.
Id. at 222. Hence, reduced to its essence, Whitt stands for the proposition that a business may be held liable to pedestrian passers-by by reason of the failure of the *1059 business to provide safe egress to vehicles exiting the premises.[5]
Nevertheless, while the actual holding of Whitt may have been narrow, that conclusion was predicated upon our express rejection of the so-called agrarian rule of no liability in favor of an analysis under McCain. In fact, even before our decision in Whitt, Florida courts had applied McCain principles to circumstances similar to those presented herein and in Whitt. See Dykes, 645 So.2d at 52 (applying McCain to determine liability of city for trees and bushes along right-of-way obstructing view of motorists); Grier v. Bankers Land Co., 539 So.2d 552, 553 (Fla. 4th DCA 1989) (reversing summary judgment in favor of a defendant landowner where foliage protruding from defendant's property into the right-of-way obstructed approaching motorist's view of the intersection); Fernandez v. Flores, 467 So.2d 364, 365 (Fla. 2d DCA 1985) (finding that a jury question was presented where car of property owner parked on shoulder of road obstructed approaching motorist's view of the intersection); Armas v. Metro. Dade County, 429 So.2d 59, 60-61 (Fla. 3d DCA 1983) (reversing summary judgment in favor of a defendant landowner where foliage protruding from defendant's property into the public right-of-way obstructed approaching motorist's view of a stop sign); Morales v. Costa, 427 So.2d 297, 298 (Fla. 3d DCA 1983) (same).
Indeed, the Fifth District's opinion on rehearing correctly notes that Florida courts had recognized the duty of a landowner to adjacent motorists in cases preceding our holding in Whitt:
For example, a private non-commercial landowner who allows a limb from a tree on his or her property to protrude over the boundary line and obscure a sign on a roadway may be held liable to a motorist who is unable to see the sign and abide by its message. See Armas v. Metropolitan Dade County, 429 So.2d 59 (Fla. 3d DCA 1983); Morales v. Costa, 427 So.2d 297 (Fla. 3d DCA), review denied, 434 So.2d 886 (Fla.1983). In Sullivan v. Silver Palm Properties, Inc., 558 So.2d 409 (Fla.1990), the Florida Supreme Court discussed the decisions in Armas and Morales and the foreseeability of the danger posed by a branch that overhangs the landowner's property and obstructs a traffic control sign. The court stated that "common sense required that a duty be imposed upon the landowner to remove landscaping which obstructed critical traffic signage. Vegetation that overhangs and blocks out a traffic control device constitutes an obvious condition and presents an imminent danger of uncontrolled traffic." Id. at 411 (quoting Silver Palm Props., Inc. v. Sullivan, 541 So.2d 624, 626 (Fla. 3d DCA 1988)). Surely, if the danger posed by an overhanging branch that obstructs a sign is foreseeable, the danger posed by a stand of foliage large enough to block the view of an entire intersection is also foreseeable. To follow the rationale of Williams to its logical conclusion would result in the anomalous situation in the law that a private *1060 landowner may be held liable for a branch of a tree that blocks the view of a sign, but may escape liability for a large stand of foliage that blocks the view of an entire intersection.
Davis, 909 So.2d at 313. We agree with the district court that even before our decision in Whitt, numerous Florida cases properly applied a McCain analysis in holding landowners responsible under a standard of reasonable care for conditions emanating from their property that were determined to constitute a danger and hazard to others. See Davis, 909 So.2d at 311-12 & n. 1.[6]
In fact, as early as 1937 this Court recognized a duty of landowners extending to those off the premises, and thereby implicitly, at least, rejected any absolute rule of no liability:
[T]here is no liability on the part of a landowner to persons injured outside his lands (which includes persons on adjacent highways), unless the owner has done or permitted something to occur on his lands which he realizes or should realize involves an unreasonable risk of harm to others outside his land, and therefore imposes on him, as an owner or possessor of the land, the duty of abating or obviating the use or condition from which the risk is encountered.
Hardin v. Jacksonville Terminal Co., 128 Fla. 631, 175 So. 226, 228 (1937). This language from Hardin was cited by Judge Schwartz in a dissent we discussed in Whitt. See supra note 4.
In Sullivan v. Silver Palm Properties, Inc., 558 So.2d 409 (Fla.1990), an opinion cited by the district court, while finding no liability for root growth beyond the property, we explained a specific example of the duty owed by landowners while approving the Third District's characterization of the prior holdings in Armas and Morales:
As the majority below noted:
[C]ommon sense required that a duty be imposed [in Armas and Morales] upon the landowner to remove landscaping which obstructed critical traffic signage. Vegetation that overhangs and blocks out a traffic control device constitutes an obvious condition and presents an imminent danger of uncontrolled traffic. The offending branch, moreover, need only be clipped away, a straightforward remedy.
Sullivan, 558 So.2d at 411 (quoting Silver Palm Props., Inc. v. Sullivan, 541 So.2d 624, 626 (Fla. 3d DCA 1988)). It is important to note that these earlier decisions, like our decision in Whitt, rejected any absolute rule of no liability in favor of an application of McCain's principles. Further, in applying the law from these decisions, like the district court, we can see little, if any, meaningful distinction between an obstruction of vision of a road right-of-way to a motorist approaching an intersection, and an obstruction to vision of a highway control device to a motorist approaching the same intersection. In both instances, motorists may be impaired in their ability to safely traverse the intersection.
As we noted in Whitt, it is apparent that today's society is much more urban than the society that produced the no-liability agrarian rule. See Whitt, 788 *1061 So.2d at 222.[7] As a consequence, courts must remain alert to the changes in our society that may give rise to the recognition of a duty even where none existed before. Absolute rules, while predictable in the outcomes they produce, may not be suitable to protect societal interests. This is especially true as we attempt to cope with the carnage on our highways. While a strict rule of immunity from liability for harms caused by conditions on land adjacent to roadways may have once been a practical necessity for an agrarian society and economy, it is markedly less so in Florida's modern society and landscape. See Keeton et. al., supra, § 57, at 391. In the modern landscape it has become an inescapable fact that people rely heavily, if not exclusively, on the automobile for transportation both in rural and urban communities.[8] We simply cannot ignore the fact that every year highway accidents kill thousands and injure millions of our citizens, while inflicting economic costs in the billions of dollars. Under these circumstances, the dominance of the automobile and the dangers incident thereto have become a modern fact of life[9] that make it more likely that a dangerous condition on private property at a highway intersection may cause harm to those on adjacent roadways.[10]
However, with the exception of our holding in Whitt, there are no Florida decisions *1062 imposing liability upon a property owner based on natural conditions contained wholly within the boundary of the private property. See Stevens v. Liberty Mut. Ins. Co., 415 So.2d 51, 52 (Fla. 3d DCA 1982) (asserting that in the absence of a violation of a statute, a landowner does not have a duty to "maintain his property in a condition so that a motorist approaching a public highway intersection can see other approaching motorists"); Pedigo v. Smith, 395 So.2d 615, 615-17 (Fla. 5th DCA 1981) (finding no liability of landowner for visual obstruction of tree located on the property); Evans, 391 So.2d at 232-33 (declining to impose liability where foliage entirely on property obstructed view of the intersection). This remains a critical distinction in our case law where we have recognized a duty of landowners to motorists. In all of the cases where a duty has been recognized prior to Whitt, the landowner was charged with permitting conditions on the property, such as overgrown foliage, to intrude into the public right-of-way and, for example, to block a motorist's view of a traffic control device or of other vehicle traffic. As we noted in Sullivan, it is in those instances where the condition emanating from the private property is alleged to have intruded into the public way and had a foreseeable harmful effect on the visibility of the adjacent public right-of-way that the landowner has been held subject to liability under McCain's negligence principles. See Sullivan, 558 So.2d at 411. We find this distinction in our case law serves to draw a clear and manageable line for citizens and courts.
We conclude that these prior decisions can best be reconciled by a recognition that ordinarily a private residential landowner should be held accountable under the zone of risk analysis principles of McCain only when it can be determined that the landowner has permitted conditions on the land to extend into the public right-of-way so as to create a foreseeable hazard to traffic on the adjacent streets. In Hardin, we talked in terms of a landowner being free of responsibility "unless the owner has done or permitted something to occur on his lands which he realizes or should realize involves an unreasonable risk of harm to others outside his land." 175 So. at 228. This, of course, is very similar to the foreseeable zone of risk analysis we established in McCain to determine the existence of a legal duty. Applying that test here, we can see little basis for imposing liability on the owner of a wooded residential lot for passively permitting the property to remain in its natural condition so long as the growth does not extend beyond the property's boundaries. Unlike the situation in Whitt, wherein we concluded that it should be foreseeable to the operator of a commercial service station that obstructions to the vision of an exiting motorist could constitute a danger to adjacent pedestrians, we find it unlikely that a residential landowner would foresee that adjacent motorists would be endangered by the mere presence of foliage on the property.
In short, while we conclude that McCain's principles of duty should be extended in appropriate circumstances to owners or occupiers of commercial property and to other property owners who permit conditions on their property to extend into the public right-of-way, we do not believe McCain's principles lead to a finding of duty here. While all property owners must remain alert to the potential that conditions on their land could have an adverse impact on adjacent motorists or others, we are not convinced the existing rules of liability established by our case law that distinguish conditions having an extra-territorial effect from those limited *1063 to the property's boundaries should be abandoned.[11]
We also must be ever mindful that motorists in Florida have a continuing duty to use reasonable care on the roadways to avoid accidents and injury to themselves or others. See Bellere v. Madsen, 114 So.2d 619, 621 (Fla.1959) (stating that a motorist has a duty to drive with reasonable care commensurate with the road and surroundings); Nelson v. Ziegler, 89 So.2d 780, 783 (Fla.1956) (stating that a driver has a duty to exercise reasonable care while driving on a public roadway). That duty includes a responsibility to enter intersections only upon a determination that it is safe to do so under prevailing conditions. That continuing duty of motorists is not affected by our holding today.

Conclusion
Because of the great reliance on automobiles, the higher population density in today's society, and the critical importance of highway safety, all citizens must share the responsibility to assure public safety. Although motorists continue to be primarily responsible for navigating our highways in a safe manner, Florida's system of comparative negligence ensures that the fault of all who may have acted negligently will be taken into account in determining responsibility for a particular injury. However, while we have found there is no principled basis for not extending the law of negligence set out in McCain to the conditions on private property that may protrude into the public right-of-way so as to create a hazard to adjacent traffic, we conclude that residential landowners who do not permit conditions on their land to extend beyond its boundaries should not be subject to the same liability.
Accordingly, we answer the reworded certified question in the negative, quash the decision of the district court, and remand this case for further proceedings consistent herewith.
It is so ordered.
PARIENTE, QUINCE, and CANTERO, JJ., concur.
CANTERO, J., concurs with an opinion.
LEWIS, C.J., concurs in result only with an opinion, in which WELLS and BELL, JJ., concur.
WELLS, J., concurs in result only with an opinion, in which BELL, J., concurs.
CANTERO, J., concurring.
I join the Court's decision. I write only to emphasize that even foliage encroaching onto the public right-of-way does not necessarily breach a duty to pedestrians or motorists. As the majority repeatedly states, ordinarily a landowner should be held accountable only when conditions on the land "extend into the public right-of-way so as to create a foreseeable hazard to traffic on the adjacent streets." Majority at 1062. In other words, not every encroachment of foliage will result in liability. As the ordinance in this case reflects, foliage usually will obstruct a driver's vision, if at all, only when it encroaches at a height between two to six feet.[12] Oak trees, for example, may have branches twenty feet high that may rise over the street, but block no one's view of traffic. In fact, our state is home to many "canopy *1064 roads," some of which are considered historic, whose charm is precisely the thick green foliage that hangs over the road like a ceiling.[13] Our decision today does not jeopardize such landscaping as long as it does not create a traffic hazard.
LEWIS, C.J., concurring in result only.
I concur in result only because the majority decision today with regard to the liability of a passive landowner is too expansive in analysis. I do not agree with regard to the extension of liability and the expansion of the analysis employed in Whitt v. Silverman, 788 So.2d 210 (Fla. 2001), to the passive landowner circumstances presented in the instant case. In Whitt, it was conduct and the manner of operation of the property that created a situation in which vehicles were being discharged into the public right-of-way in an unsafe manner which produced responsibility, not the mere passive ownership of the land with vegetation. See id. at 222. The Whitt decision was not in any way premised on the notion that in our modern, more urban society, liability must always attach when an object on private property may interfere with a driver's view of a second vehicle traveling on a nearby right-of-way so as to create a foreseeable zone of risk. Instead, it was the manner in which a gas service facility was operated that caused traffic to flow out of the property and into a public street which created the liability. The present dispute is clearly distinguishable from Whitt because here no object attached to or discharged from the property entered upon or obstructed the public right-of-way in any manner. In my view, the majority has now mixed, blended, and confused the general negligence conduct which creates a "foreseeable zone of risk" doctrine into the landowner duty to invitees principles, and then into the passive landowner duty to remove items extending beyond the property line protruding into public right-of-ways, to produce this decision.
It is undisputed that the foliage at issue here was entirely contained within the property boundaries. Therefore, the extension of the analysis in Whitt to the present matter is unnecessary, inappropriate, and may unnecessarily create extensive liability on the part of many passive Florida homeowners contrary to well-established law and without support of any Florida precedent. Until now, Florida law has clearly distinguished between the liability of property owners based on objects entirely on and within their property and responsibility for objects which may protrude into the public right-of-way. In Bassett v. Edwards, 158 Fla. 848, 30 So.2d 374 (1947), this Court clearly established that when foliage located entirely on and within real property boundaries becomes a visual obstruction for vehicles operated upon a public roadway and the view of an intersection, it is the duty of the operator of the vehicle to observe the obstruction and adjust the operation of the vehicle accordingly, not a duty upon the landowner to remove the vegetation. See id. at 376. Although it was uncontested in Bassett that the foliage obstructed the view of the intersection, no duty was imposed upon the owner of the property. See id. Since Bassett and until today, liability with regard to an obstructed view of an operator of a vehicle crossing an intersection has only been imposed on the owners of properties at those intersections where an object on the property or belonging to the property owner has escaped or is beyond *1065 the boundary of the real property and has moved into the public right-of-way, or where negligent actions have occurred. See Grier v. Bankers Land Company, 539 So.2d 552, 553 (Fla. 4th DCA 1989) (liability imposed where foliage protruding from property obstructed approaching motorist's view of the intersection); Fernandez v. Flores, 467 So.2d 364, 365 (Fla. 2d DCA 1985) (liability imposed where automobile of property owner parked on shoulder of road obstructed approaching motorist's view of the intersection); Morales v. Costa, 427 So.2d 297, 298 (Fla. 3d DCA 1983) (liability imposed where foliage protruding from property obstructed approaching motorist's view of a stop sign); Armas v. Metropolitan Dade County, 429 So.2d 59, 60-61 (Fla. 3d DCA 1983) (same). Prior to the decision of the majority today, liability has never been imposed upon a passive property owner in Florida where an object entirely on and within the property boundary has obstructed the view of the intersection. See Stevens v. Liberty Mutual Ins. Co., 415 So.2d 51, 52 (Fla. 3d DCA 1982) (no liability imposed where foliage entirely on property obstructed view of the intersection); Evans v. Southern Holding Corp., 391 So.2d 231, 232 (Fla. 3d DCA 1980) (same). As noted by the Third District, Florida courts have not imposed liability in these situations, which is an acknowledgement that passive property owners have the right to use their property in any manner they choose so long as foliage does not protrude from their property. See Morales, 427 So.2d at 298.
The majority's analysis may expose passive property owners in Florida to liability for a limitless number of "foreseeable" circumstances and may impose upon other well-established property rights. It is foreseeable that drivers may not only travel at, but may exceed, the speed limit and, therefore, under the majority's approach, the clear cutting and leveling of all forms of trees and other vegetation may be required in a near limitless fashion. I would not expand the law as the majority appears to do without a factual case and controversy that requires such an expansion. The decision of the majority, based on hypothetical facts, is a practice we have avoided in the past and one which may produce unknown and unintended consequences.
WELLS and BELL, JJ., concur.
WELLS, J., concurring in result only.
I concur in quashing the decision of the district court but do not join in the opinion. The opinion is almost entirely dicta because it does not address the issues in this case.
I would answer the question as certified by the district court in the negative. That question was:
DOES THE FORESEEABLE ZONE OF RISK ANALYSIS ESTABLISHED IN MCCAIN [V. FLORIDA POWER CORP., 593 So.2d 500 (Fla.1992),] APPLY TO PRIVATE OWNERS OF NON-COMMERCIAL PROPERTY CONTAINING FOLIAGE THAT BLOCKS MOTORISTS' VIEW OF AN ADJACENT INTERSECTION AND CAUSES AN ACCIDENT WITH RESULTING INJURIES?
The question certified by the district court addresses the issues of this case as framed by the pleadings themselves:
72. That at all times material hereto, Defendants WILLIAMS were the owners of real property located at the northeast corner at or near the intersection of Sidney Hayes Road and Pine Street in Orlando, Orange County, Florida.
73. That on or about August 25, 1997, decedent Twanda Green was operating a vehicle at or near the above-described *1066 intersection when she was hit broadside by oncoming traffic resulting in her death.
74. That according to the Investigative Report of the Florida Highway Patrol, said property was overgrown with bushes and trees thereby obscuring the view for westbound traffic on Pine Street, of the northbound lane of Sidney Hayes Road, up to a distance of approximately 12 feet from the intersection.
75. Defendants WILLIAMS had a duty and/or assumed a duty to maintain the vegetation growing on their property so that the vegetation would not obstruct the vision of drivers lawfully operating vehicles at or near the intersection of Pine Street and Sidney Hayes Road, Orlando.
Davis, 909 So.2d at 303 (setting forth the allegations of the third amended complaint). Based upon this pleading, it is seen that this case involves only the issue of whether the landowner "had a duty and/or assumed a duty to maintain the vegetation growing on their property."
The majority's reworded question concerns an issue which is not presented in this case. This case as pled and as decided below does not involve an issue concerning foliage on residential property extending outside the bounds of the property and into the right-of-way so as to interfere with a motorist's ability to safely travel on the adjacent roadway. Since that is not an issue presented by this case, answering the rephrased certified question is the very essence of obiter dictum. See Bunn v. Bunn, 311 So.2d 387, 389 (Fla. 4th DCA 1975) ("[A] purely gratuitous observation or remark made in pronouncing an opinion and which concerns some rule, principle or application of law not necessarily involved in the case or essential to its determination is obiter dictum, pure and simple."). Such dictum does not function as precedent. See Continental Assur. Co. v. Carroll, 485 So.2d 406, 408 (Fla.1986).
I find that Judge Griffin's concurring-in-part, dissenting-in-part opinion in the decision below directly and correctly decides the issue posed in this case. I would adopt her opinion.
BELL, J., concurs.
NOTES
[1] In addition, in a separate appeal, the Fifth District reversed a trial court decision dismissing Davis's claim against Orange County predicated upon the county's alleged breach of a contract with the landowner requiring the county to keep the landowner's property free of obstructions by foliage at the intersection. Davis v. Orange County Bd. of County Comm'rs, 852 So.2d 370, 370-71 (Fla. 5th DCA 2003). The district court utilized the contract between Williams and the county as an additional basis for finding a duty voluntarily assumed by Williams in this case. Davis v. Dollar Rent A Car Sys., Inc., 909 So.2d 297, 304 (Fla. 5th DCA 2004). Further, while Davis relies on the common law of negligence and does not allege that a duty of care is established by statute or ordinance, the parties agree that such an ordinance existed in Orange County and provides in part:

(b) Intersection visibility. When an accessway intersects a public right-of-way, landscaping shall be used to define the intersection, provided, however, that all landscaping within the triangular areas described below shall provide unobstructed cross-visibility at a level between two (2) and six (6) feet. Trees having limbs and foliage trimmed in such a manner that no limbs or foliage extend into cross-visibility shall be allowed, provided they are located so as not to create a traffic hazard. Landscaping, except for grass and ground cover, shall not be located closer than three (3) feet from the edge of any accessway.
Orange County, Fla., Code § 24-4(b) (1992). We express no view about the effects of the contract or the ordinance on the potential liability of any party, and limit our discussion and decision to the question certified by the district court as we have restated that question.
[2] In McCain, we also explained that it is important to note the difference between the type of foreseeability required to establish a duty as opposed to that which is required to establish proximate causation. 593 So.2d at 502-03. We explained that establishing the existence of a duty requires demonstrating that the activity at issue created a general zone of foreseeable danger of a certain type of harm to others. Id. at 502. By contrast, establishing proximate cause requires a factual showing that the dangerous activity foreseeably caused the specific harm suffered by those claiming injury in the pending legal action. Id. In other words, establishing the existence of a duty under our negligence law is a minimum threshold legal requirement that opens the courthouse doors to the moving party, and is ultimately a question of law for the court rather than a jury. Id. The determination of whether that duty was breached in a particular instance, however, will ordinarily be reserved for the fact-finder, be it judge or jury. Id. at 504.
[3] See, e.g., Goldberg v. Fla. Power & Light Co., 899 So.2d 1105, 1110-11 (Fla.2005) (finding a duty based on McCain because the defendant power company created a foreseeable zone of risk by terminating power to an intersection, thereby deactivating the traffic signals); Markowitz v. Helen Homes of Kendall Corp., 826 So.2d 256, 259 (Fla.2002) (citing to McCain regarding a duty of care on landowners to use reasonable care to keep their premises in a safe condition for invitees); Malicki v. Doe, 814 So.2d 347, 362 (Fla.2002) (using the McCain foreseeability analysis to determine whether to impose a duty upon a party for negligent hiring of an employee); Nova Se. Univ., Inc. v. Gross, 758 So.2d 86, 88 (Fla. 2000) (imposing a duty on a university not to assign students to an internship site in an unreasonably dangerous location); Henderson v. Bowden, 737 So.2d 532, 535-37 (Fla. 1999) (using McCain to find a duty on the part of sheriff's deputies to passengers of a vehicle stopped because the driver was under the influence of alcohol when the deputies allowed a drunk passenger to drive the car to a nearby gas station to call his parents); Fla. Power & Light Co. v. Periera, 705 So.2d 1359, 1361 (Fla. 1998) (finding a duty on the part of a power company to a motorcyclist who was riding his motorcycle unlawfully on a bicycle path and was struck by a wire); Kitchen v. K-Mart Corp., 697 So.2d 1200, 1202, 1208 (Fla. 1997) (holding that the risk of danger was sufficient to create a duty on the part of a firearm retailer to third parties not to sell a firearm to a customer the retailer knew was intoxicated); Union Park Mem'l Chapel v. Hutt, 670 So.2d 64, 67 (Fla. 1996) (holding that a funeral director who voluntarily undertook to direct a funeral procession owed a reasonable duty of care to a member of the procession who was injured in a traffic accident); Pate v. Threlkel, 661 So.2d 278, 279-80, 282 (Fla. 1995) (finding a legal duty on the part of a physician to warn the adult daughter of a patient with thyroid cancer that the daughter should be tested for the disease, which she in fact had); City of Pinellas Park v. Brown, 604 So.2d 1222, 1224-25 (Fla. 1992) (concluding that police participating in a vehicular pursuit owed a duty to third-party motorists injured in a collision with the fleeing criminal's vehicle); accord Napoli v. Buchbinder, 685 So.2d 46, 47 (Fla. 4th DCA 1996) (holding that the trial court erred in failing to apply McCain when granting the defendants' motion for summary judgment in a wrongful death action that alleged the design of the defendants parking lot and placement of a stop sign contributed to the cause of an accident); Dykes v. City of Apalachicola, 645 So.2d 50, 52 (Fla. 1st DCA 1994) (holding that McCain should be applied to determine whether a city was liable for trees and bushes obstructing view). For an in-depth discussion regarding some of these cases and others citing McCain to establish legal duty, see William N. Drake, Jr., Foreseeable Zone of Risk: Confusing Foreseeability with Duty in Florida Negligence Law, Fla. B.J. Apr. 2004, at 10.
[4] We explained in Whitt that the agrarian rule and its protective policy toward landowners had its roots in times when most land was undeveloped. See Whitt, 788 So.2d at 213-14 (citing Evans v. S. Holding Corp., 391 So.2d 231, 233 (Fla. 3d DCA 1980) (Schwartz, J., dissenting); Keeton et al., supra, § 57, at 390). As suggested by its name, the rule was developed when we were largely an agrarian society; the rule provided that a landowner was essentially immune to claims by persons not on the landowner's property when injured, even when those persons claimed a condition on the land caused the injury. Id. at 213. The rule is also based in part on a distinction between acts of malfeasance and nonfeasance, which reasons that harm resulting from the mere passive existence of purely natural conditions constitutes nonfeasance, whereas harm caused by the active creation of conditions would constitute malfeasance. See id. at 214 n. 4; Sprecher v. Adamson Cos., 30 Cal.3d 358, 178 Cal.Rptr. 783, 636 P.2d 1121, 1125-26 (1981). At common law, courts imposed a duty only for malfeasance while imposing no duty for nonfeasance. See Keeton et al., supra, § 56, at 373.
[5] Cf. Gunlock v. Gill Hotels Co., 622 So.2d 163, 164 (Fla. 4th DCA 1993) (finding that a hotel owed a duty to exercise reasonable care for safety of patrons passing over highway to and from its premises); Johnson v. Howard Mark Prods., Inc., 608 So.2d 937, 938 (Fla. 2d DCA 1992) (holding that a trial court prematurely determined that a night club had no duty to protect patrons from dangers incidental to parking); Thunderbird Drive-In Theatre, Inc. v. Reed, 571 So.2d 1341, 1343-44 (Fla. 4th DCA 1990) (determining that a jury question was presented as to whether a drive-in theatre was liable for injuries resulting from traffic conditions at its entrance).
[6] There is general agreement among legal commentators today that a landowner has some duty to use his land reasonably so as not to injure those off his premises. See Restatement (Second) of Torts § 364 (1965) (stating that a landowner has a duty to persons off the land to maintain artificial constructions in reasonably safe conditions); Restatement (Second) of Torts § 371 (1965) (stating that a landowner has a duty to others off the land to conduct activities on the land in a reasonably safe manner).
[7] According to the United States Census Bureau, in 2000 Florida's population was 89.3% urban. This number lies in contrast to the nation as a whole, which in 2000 was 79% urban. See U.S. Dep't of Commerce, Econ. & Statistics Admin., U.S. Census Bureau, Statistical Abstract of the United States: 2006 31 tbl.27 (125th ed.2005); see also Keith Aoki, Race, Space, and Place: The Relationship between Architectural Modernism, Post-Modernism, Urban Planning, and Gentrification, 20 Fordham Urb. L.J. 699, 706, 736-37 (1993) (noting the population shift in the late nineteenth century to the city and then in the mid-twentieth century to the suburb).
[8] See Audrey G. McFarlane, The New Inner City: Class Transformation, Concentrated Affluence and the Obligations of the Police Power, 8 U. Pa. J. Const. L. 1, 8 (2006) (stating that the explosive growth of suburbs during the twentieth century was in part due to increased reliance on the automobile as a viable method of intra-city travel to work); Arnold W. Reitze, Jr., A Century of Air Pollution Control Law: What's Worked; What's Failed; What Might Work, 21 Envtl. L. 1549, 1572-75 (1991) (noting the high dependence on the automobile in modern sprawling cities).
[9] For example, in 2004, there were 46,200 fatalities from motor vehicle accidents. National Safety Council, National Safety Council Injury Facts 86 (2005-2006 ed.). The average economic cost of each fatal car crash was $1,130,000. Id. at 91. The total approximate number of crashes, both fatal and non-fatal, was 10,900,000, and total motor vehicle costs for all types of car crashes was $240.6 billion. Id. at 86.
[10] We also note that tort liability in Florida is premised on pure comparative negligence, which means that a jury should apportion fault between the plaintiff, defendant, and any third parties alleged to have been at fault, and render an award based on a defendant's percentage of fault in causing an injury. See Garcy v. Dupee, 731 F.Supp. 1582, 1583 (S.D.Fla. 1990) ("Pure comparative negligence provides the rule of liability in Florida."); Hoffman v. Jones, 280 So.2d 431, 438 (Fla. 1973) (deciding to use pure comparative negligence rather than contributory negligence as a method of determining and apportioning fault in Florida). Indeed, the Florida Legislature has recently acted to ensure that all those who may have contributed to causing an injury should be held liable for damages only to the extent of the actual percentage of fault each has been determined to be responsible. See ch. 2006-6, § 1, at 191, Laws of Fla. (mandating that courts "shall enter judgment against each party liable on the basis of such party's percentage of fault and not on the basis of the doctrine of joint and several liability"). Granting absolute immunity to some who may in fact be partially responsible for contributing to the cause of an accident would obviously undermine this policy of shared responsibility.
[11] Our holding, of course, does not consider or preclude government regulation of conditions on private property or our future consideration of the issue under other circumstances not presented here.
[12] Orange County, Fla.Code § 24-4(b) (1992) (amended 2001).
[13] In Leon County, Florida, a website is dedicated to informing the public of the canopy roads within that county. See http://www. leoncountyfl.gov/PUBWORKS/oper/canopy/ visitCR.asp.